## No. 16,434.

SHAROFF ET AL. *v.* IACINO ET AL.
(231 P. [2d] 959)

Decided April 23, 1951.  Rehearing denied May 21, 1951..

Mr. HARRY L. SILVERMAN, for plaintiffs in error.

Messrs. DICKERSON, MORRISSEY & ZARLENGO, for defendants in error.

*In Department.*

MR. JUSTICE STONE delivered the opinion of the court.

PLAINTIFFS in error, as plaintiffs below, brought suit against defendants in error, alleging debt to them in the sum of $810.24 for goods sold and delivered. Defendants by counterclaim alleged debt by plaintiffs to defendants in the sum of $1733.14, likewise for goods sold and delivered. There was no dispute by defendants as to the goods sold to them, and the only issue tried was that of sale of goods by defendants to plaintiffs. That issue was tried to a jury which returned a verdict in favor of defendants in the sum of $922.90, the full amount of their claim, and judgment was entered accordingly.

It was not disputed that the merchandise, liability for the payment of which was at issue, was delivered as ordered, sometimes by defendants, and sometimes by a truck of Denver Poultry Company, to the Manhattan Restaurant. The issue to be determined was whether or not Denver Poultry Company was directly obligated to pay for that merchandise, or whether it was a direct obligation of Manhattan Restaurant; also involved was the issue of liability of plaintiff partnership, rather than of Julius J. Sharoff individually.

In brief outline, Julius J. Sharoff testified that he was a general partner in Denver Poultry Company; that his copartner Frieda Sharoff was his wife; that he devoted his time to its business, did all the buying for it and had been in active management of its affairs since it began operating in 1937. He further testified that the Manhattan Restaurant was a corporation; that he had been an owner of one-third of its capital stock, and at all times here involved and from August 1947 until the "restaurant went broke" in February 1949, was president

of the corporation; that his brother also owned one-third of its capital stock and was a director, and that all the stockholders "was right there to talk things over with." The place of business of Denver Poultry Company was located about two blocks from the Manhattan Restaurant. Sharoff and Marion Iacino had been acquainted for some fifteen years, and Denver Poultry Company had sold merchandise to East Jefferson Market during that time.

Marion Iacino testified in substance: At the time he made his first delivery of goods to the Manhattan Restaurant in 1947, Julius Sharoff told him that he was going to buy meat from him and guaranteed the bills, and the merchandise was charged to Manhattan Restaurant. Thereafter, in June or July, 1948, defendants disposed of their business. They owed Denver Poultry Company approximately $2400, and the Manhattan Restaurant owed them approximately $700. At the suggestion of Julius Sharoff the $700 that was owed them by Manhattan Restaurant was deducted from the $2400 that they owed Denver Poultry Company and they gave Sharoff a check for the $1700 balance, which was accepted in full payment. A few months thereafter, defendants resumed business in another location, again bought poultry from Denver Poultry Company, and Marion Iacino conferred with Julius Sharoff in regard to selling meat again to the Manhattan Restaurant. He refused to sell directly to the Manhattan. He would not charge any meat to the Manhattan because there had been too much trouble in making collection of their bills before. Julius Sharoff told him to send orders for the restaurant through the Denver Poultry Company. He did it that way, and every time he sent such an order he always called Sharoff. A few times the latter told him to send the goods c.o.d., and many times he told him to charge them. The only time they were ever charged was when Sharoff so directed; otherwise, they were sent c.o.d. He told Sharoff that he was charging them to the

Denver Poultry Company, and Sharoff told him to send the meat to the Manhattan and charge it to the Denver Poultry Company.

Julius Sharoff denied any conversation with Marion Iacino pertaining to the Manhattan, but later admitted that he was called a number of times with reference to orders for it, and testified that he told them at a later time that if they would send merchandise on open account, he would see to it that they got a check for the past due accounts; that he wouldn't say that they got such a check and couldn't help it if there was no money in the treasury. There was other evidence submitted in support and corroboration of the claims of each party.

The application for reversal is based on three grounds. The first point argued is: "A partnership is not bound by an act of a partner which is without the actual or apparent scope of partnership business unless the other partner authorizes or ratifies the same."

■ ■ Assuming that this abstract statement of law is correct, it does not in itself point to any erroneous ruling of the trial court; however, in argument thereunder, it is asserted that, "There was no evidence in the record upon which Instruction No. 6 * * * might have been based, and, therefore, it was prejudicial for the court to give the same over the plaintiffs' objection." From the abstract, beyond which we need not go in search of error, it appears that instruction No. 6 was to the effect that a partner who acquiesces in the exercise of authority by another party is estopped to deny such authority. The abstract discloses no objection interposed to the giving of that instruction; there is only the statement: "Plaintiffs' excepted to instruction No. 6 and to the court's ruling." Under rule 51 R.C.P. Colo., only grounds specified in objections to instructions may be considered on writ of error and none is here disclosed. Accordingly, this specification will not be further considered.

█ It next is contended that the court erred in overruling plaintiffs' objection to the testimony of Marion Iacino as to offset by Denver Poultry Company of the $700 account owing by Manhattan Restaurant in June 1948. It appears from the record that Sharoff previously had testified to the same effect; that no objection was made to the testimony of which complaint is here made until after it was received; that no motion was made that it be stricken, and that the objection was on the sole ground that the account as so settled was not in dispute; consequently, the objection was not well taken. In any event, we think that evidence of the entire course of dealing between the parties as to charges and offsets was admissible.

█ Finally it is argued, under that specification, that the court erred in denying plaintiffs' motion for nonsuit or directed verdict. However, inspection of the abstract discloses only the following record, "Plaintiffs made a motion for a directed verdict or nonsuit on the counterclaim of the defendants. This motion was denied." Under Rule 50 R.C.P. Colo., a party who moves for a directed verdict must state the specific grounds therefor and, since none appears in the instant case, no question is presented for our determination.

The second point argued is: "Statute of Frauds was applicable to alleged agreement for the following reasons: (1) Credit was extended to Manhattan Restaurant, Inc.; (2) No interest of plaintiffs' partnership was subserved by promise, and leading object of promise was to secure credit for Manhattan Restaurant, Inc.; (3) Promise obligated partnership to pay non-partnership debt."

Again, this statement of law presents no ruling of the trial court and in the argument concerning it we find only one error specified which is the same as that set out under the first point, to wit, error of the court in denying motion for nonsuit or directed verdict, and error in denying plaintiffs' motion for judgment thereunder

pursuant to Rule 50 R.C.P. Colo. This specification, as we have seen, is without support.

The third and final point argued is: "Books of account are inadmissible to show to whom credit was given when that fact is in issue or for the purpose of permitting a party to introduce in evidence an entry in his books showing his version of a parol contract."

Under argument of this abstract statement of law, two alleged errors are specified. The first is, that it was improper to admit defendants' exhibit 2, purporting to be the ledger sheet reflecting the deliveries made to Manhattan Restaurant and the payments on account. It is said: "The notations on this exhibit purported to charge Denver Poultry Co. for these deliveries. The notations were based on hearsay. There was nothing on the delivery invoices * * * from which posting was made in the ledger, to indicate that credit was given to Denver Poultry Co." It appears from the record that after he had made objection to admission of that exhibit and before any ruling on it, plaintiffs' counsel cross-examined the witness who had identified it with reference to its contents and quoted from it before the jury. Thereby we think it was made admissible.

The last specified error is that of admitting the testimony of defendant Marion Iacino, Jr., that the account was owing by the Denver Poultry Company. It appears from the record that the testimony to which objection is now made was elicited on cross-examination by plaintiffs' counsel in direct answer to his question, by whom it was owed. No motion to strike the answer was made. Further, having asked for the conclusion of the witness as to who was the debtor, objection might not successfully be raised that the answer was hearsay.

The judgment is affirmed.

Mr. Chief Justice Jackson and Mr. Justice Moore concur.