**William J. BOWMAN, Petitioner,**

v.

**Donald F. SONGER, Jr., Respondent.**

**No. 90SC643.**

Supreme Court of Colorado,
En Banc.

Nov. 25, 1991.

---

Paul D. Cooper, Barbara H. Glogiewicz, Cooper & Kelley, P.C., Denver, for petitioner.

Joseph M. Epstein, Epstein & Lawrence, P.C., and Susan Graham Barnes, McKenna & Cuneo, Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review *Songer v. Bowman*, 804 P.2d 261 (Colo.App.1990). The issues before us are: 1) whether there is a time limitation under C.R.C.P. 59 for filing a motion to reconsider the trial court's ·order granting a new trial and 2) whether the court of appeals erred by creating a claim for a doctor's failure to warn of the risks involved in using a certain medicine. For the reasons stated below, we affirm the court of appeals' decision. First, C.R.C.P. 59 does not apply to a motion to reconsider an order granting new trial because such an order is not a final order. Second, no new claim for relief was created by the court of appeals. It simply upheld the admission of evidence of a physician's failure to warn a patient of substantial risks of a medicine because it was relevant to the standard of care under a negligence claim.

## I.

In 1983, Donald F. Songer, Jr. sought treatment from Dr. William J. Bowman, a licensed physician specializing in the field of dermatology, for a chronic skin condition. Bowman prescribed the medication Oxsoralen to be applied by Songer at home. This drug is activated by exposure to ultraviolet light, either natural or artificial. As a result of Songer's application of the medicine and exposure to direct sunlight, Songer claims that he suffered second and third degree burns to his feet and legs and aggravation of his underlying dermatitis.

Songer claims that these injuries and damages resulted from Bowman's negligence.

The evidence is in dispute as to the length of time which Bowman prescribed Songer to remain in the sun. The prescription itself and the medical label reflect that Bowman's instructions for use were as follows:

Apply one hour prior to exposure. Start exposure at ½ hour noonday sun, twice weekly.

At trial, the manufacturer's warning, as set forth in the package insert and the Physicians' Desk Reference,[1] was admitted as evidence of the dangerous characteristics of Oxsoralen and the standard of care in using the drug to treat patients. The relevant warning on Oxsoralen reads as follows:

Caution: Methoxsalen lotion is a potent drug capable of producing severe burns if improperly used. It should be applied only by a physician under controlled conditions for light exposure and subsequent light shielding. *This preparation should never be dispensed to a patient.* (Emphasis in original.)

The parties disagree as to whether, at the time he prescribed the medicine, Bowman warned Songer of the high risk of burning due to overexposure. Neither the label nor the prescription contained any warnings concerning the potential danger of severe burning. Bowman claims that Songer remained in the sun for one hour, contrary to his directions. Songer claims that he remained in the sun for one-half hour. Within 24 hours after the exposure, Songer suffered severe burns. Eventually, the aggravated condition prevented Songer from wearing shoes for extended periods of time and resulted in his termination from his employment in November, 1984.

Songer filed this medical malpractice action against Bowman alleging that Bowman negligently prescribed the ointment. The case was tried to a jury, which returned a verdict on May 17, 1988 in favor of Songer for $150,000, but found that Son-

---

1. *Physicians' Desk Reference* 923–24 (Medical Economics Company Inc., 37th ed. 1983). The Physicians' Desk Reference is a reference source generally used by physicians and contains instructions and manufacturers' warnings for various drugs used in treatment.

ger was 25% negligent. Accordingly, the court entered judgment on the verdict in the amount of $112,500 on that same day.

The trial court granted Bowman's timely motion for a new trial on August 23, 1988. On September 30, 1988, Songer filed a motion for reconsideration. of the motion granting a new trial. Bowman objected both on the grounds that the court lacked jurisdiction to consider the motion and on the merits. The trial court heard the motion and reversed the order granting the new trial, reinstating the original verdict in favor of Songer. Bowman filed a motion for reconsideration of that reinstatement on November 14, 1988, and the trial court denied that motion. Bowman then appealed to the Colorado Court of Appeals. The court of appeals affirmed the lower court's rulings on the two issues in question. It reasoned that C.R.C.P. 59 is aimed at motions which seek to vacate, amend or modify the judgment entered. It found that the rule did not apply because Songer's motion for reconsideration did not challenge the judgment, but was directed to the order granting a new trial. Since an order granting a new trial does not constitute a final judgment, the court of appeals reasoned that the trial court retains jurisdiction to modify or rescind the order prior to the entry of any final judgment. Thus, the motion for reconsideration filed more than 15 days after the order granting a new trial was not contrary to the limitation set forth in C.R.C.P. 59. *Songer,* 804 P.2d at 263. On the second issue, the court of appeals found that the failure to warn of dangers inherent in a medical procedure is probative of and relevant to determining whether the proper standard of care was satisfied in a claim of negligence. *Id.* at 263.

## II.

Bowman first argues that under C.R.C.P. 59, Songer's motion for reconsideration of the order granting a new trial should have been filed within 15 days of the order. We disagree.

C.R.C.P. 59 states in relevant part:

(a) Within 15 days of entry of judgment as provided in C.R.C.P. 58 or such greater time as the court may allow, a party may move for post-trial relief, including:

(1) A new trial of all or part of the issues;

(2) Judgment notwithstanding the verdict;

(3) Amendment of findings; or

(4) Amendment of judgment.

C.R.C.P. 59, 7A C.R.S. (1990). C.R.C.P. 59 makes no mention of any time requirement for a motion to reconsider an order granting a new trial. Songer argues that the source of the trial court's jurisdiction to respond to Songer's motion is its plenary power to modify or reverse any interlocutory order which it later determines was erroneously entered.

A trial court's grant of a motion for new trial is not a final judgment. *People v. Campbell,* 738 P.2d 1179 (Colo.1987) (order granting new trial is not a final judgment for purposes of appeal); *People v. Cochran,* 176 Colo. 364, 490 P.2d 684 (1974) (order granting a new trial is not a final judgment for purposes of appeal); *Andrews v. Hayward,* 149 Colo. 585, 369 P.2d 980 (1962); *Chartier v. Winslow Crane Service,* 142 Colo. 294, 350 P.2d 1044 (1960) (order granting a new trial is interlocutory and hence not reviewable). "When a motion for a new trial is granted, the issues stand undisposed of as if the cause had never been tried." *Gonzales v. Trujillo,* 133 Colo. 64, 65, 291 P.2d 1063, 1064 (1956).

Federal appellate courts have found that a trial court has the power to reconsider its order granting a new trial because such order is interlocutory and not final. *Gallimore v. Missouri Pacific Railroad Co.,* 635 F.2d 1165 (5th Cir.1981); *Bateman v. Donovan,* 131 F.2d 759 (9th Cir.1942) (applying F.R.C.P. 59). The court of appeals relied on 6A J. Moore, *Moore's Federal Practice* § 59.13[2] at 59–279 (2d ed. 1979), which states:

Since an order granting a new trial is an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter, or amend the

interlocutory order is not subject to the limitations of Rule 59.

*Songer,* 804 P.2d at 263.

We also find this analysis of F.R.C.P. 59, which is substantially similar to C.R.C.P. 59, persuasive. Until a final judgment is entered, a trial court has jurisdiction to hear such a motion to reconsider, and such a motion is not subject to the time constraints of Rule 59.

Bowman contends that *Kinzbach v. Midwest Plumbing & Heating Co.,* 128 Colo. 370, 262 P.2d 548 (1953), supports his argument that Rule 59 should apply to a motion to reconsider an order granting new trial. In that case, we determined that the defendants, who sought a writ of error from an order granting a new trial, had failed to file their motion to vacate the order within the time limit provided for in Rule 59. We stated that if the defendants intended to avoid a further trial by filing a writ of error in this court, it was necessary for them to make the judgment final by electing, within the time limit of Rule 59, to stand upon the record as made in the first trial. If such election had been made, *Kinzbach* concluded that the trial court would have had the duty to enter appropriate final orders and judgment in anticipation of proceedings in this court.

*Kinzbach* was decided before Rule 59 was amended in 1964 by the addition of subpart (h), which reads as follows:

> The granting of a new trial shall not be an appealable order, but a party by participating in the new trial shall not be deemed to have waived any objection to the granting of the new trial, and the validity of the order granting new trial may be raised by appeal after final judgment has been entered in the case.

C.R.C.P. 59, 7A C.R.S. (1990). Prior to that amendment, a party which opposed the motion for new trial could appeal the granting of the motion only if it announced its intention to stand on the judgment and took an immediate appeal. If the party went to trial without following this procedure, it

waived its right to appeal the order granting a new trial. C.R.C.P. 59(h) changed the law on waiver and allows the party opposing the motion for new trial to appeal that issue at the conclusion of the second trial. *See generally Rice v. Groat,* 167 Colo. 554, 449 P.2d 355 (1969).

As the premise for its analysis, *Kinzbach* assumed without deciding that an order granting a new trial was a final judgment.[2]

> Unless the order granting a new trial, to which they [the defendants] object, is a final judgment, they cannot succeed. Assuming, without so deciding, that such an order is one to which a writ of error may be directed, it is apparent that there has been a fatal departure from the requirements of the Rules of Civil Procedure.

*Kinzbach,* 262 P.2d at 549. This assumption now is plainly incorrect in light of the elimination of waiver by the addition of C.R.C.P. 59(h) and the solid body of case law holding that an order granting a new trial is not a final judgment. Thus, we overrule *Kinzbach* as contrary to the analysis and result reached in this opinion.

For these reasons, we find that Rule 59 does not apply to motions to reconsider an order granting a new trial, and that prior to a final judgment, the trial court retained jurisdiction to hear the motion to reconsider its order. Like other trial motions, a motion to reconsider is addressed to the sound discretion of the trial court which should set an appropriate time frame for the filing and determination of any such motion to avoid any unfairness which might occur if a motion for reconsideration were granted on the eve of the scheduled new trial.

## III.

Bowman's second contention is that the court of appeals created a separate claim for "failure to warn" by approving trial court rulings submitting to the jury certain evidence and instructions on failure

---

**2.** We note that the assumption made in *Kinzbach* apparently was abandoned shortly thereafter in *Andrews,* 369 P.2d at 981.

to warn. He argues that such a claim subjects a doctor to the manufacturer's standard, and because a doctor does not manufacture the medication prescribed, a doctor should not be held to the manufacturer's duty to warn. We do not agree that a new claim for failure to warn was created by the court of appeals. Instead, we find that the evidence and instructions on failure to warn were made as part of the negligence claim, and thus disagree that any error was made by the court of appeals.

Songer asserts that he raised only a claim for medical malpractice in his complaint, and that the evidence and instructions on failure to warn related to Bowman's alleged negligence.[3] The manner in which this case was argued and presented by Songer at trial supports our conclusion that the court of appeals did not create a separate claim of failure to warn. Songer's opening and closing arguments presented the issue of failure to warn as part of Bowman's general negligence and lack of understanding of the dangerous nature of the medicine.

The expert testimony presented two standards of care to the jury, and Songer pursued his claim of negligence under both standards. Songer's expert witnesses testified that prescription of the drug for home use was not within any accepted standard of care and cited the Physicians' Desk Reference as support for this standard. In contrast, defense experts testified that a doctor who prescribed Oxsoralen for home use in natural sunlight would be acting within the standard of care, assuming that the doctor warned the patient of the danger of burning. Songer emphasized to the jury that no evidence was presented that it was within the standard of care to prescribe the drug for home use without giving the appropriate warnings. Thus, he contended at trial that he should prevail under either standard of care.

Bowman argues that the admission of the Oxsoralen warning found in the Physi-cians' Desk Reference in conjunction with certain instructions had the effect of applying to him the product manufacturer's burden. This argument is unpersuasive. A manufacturer's instructions, informing the prescribing physician that a patient should be warned of the dangers involved in use of the medication, may be admissible evidence on the standard of care, when supported by expert testimony that it is evidence of such. A physician's duty to warn of dangers present in such a situation is wholly distinct from any duty to warn which is owed by a manufacturer of a drug.

Other jurisdictions have determined that a drug manufacturer's package insert recommendation is evidence of the standard of care in medical malpractice cases. *See, e.g., Ramon v. Farr,* 770 P.2d 131, 135 (Utah 1989); *Piano v. Davison,* 157 Ill. App.3d 649, 110 Ill.Dec. 35, 510 N.E.2d 1066 (1987), *appeal denied,* 119 Ill.2d 574, 119 Ill.Dec. 397, 522 N.E.2d 1256 (1988); *Paul v. Boschenstein,* 105 A.D.2d 248, 482 N.Y.S.2d 870 (N.Y.App.Div.1984) (holding that a doctor's departure from a manufacturer's direction or warnings is prima facie evidence of deviation from the standard of care if there is competent medical testimony that the patient's injury resulted from the doctor's failure to adhere to the recommendations).

In *Hamilton v. Hardy,* 37 Colo.App. 375, 380, 549 P.2d 1099, 1104 (1976), our court of appeals cited *Crouch v. Most,* 78 N.Mex. 406, 432 P.2d 250 (1967), in stating that "a manufacturer's warnings do not set an absolute standard of care.... The standard by which a physician's conduct is judged is an objective community standard. Reliance solely on the manufacturer's warnings may or may not have been within the standard of medical practice in Denver at that time." Thus, admission of the excerpt from the Physicians' Desk Reference was proper to aid the jury in determining whether Bowman's actions were consistent with the standard of care, and did not place

---

**3.** The complaint alleged that "the Defendant violated said duty to the Plaintiff and was negligent and/or careless in one or more of the following particulars: ... d) Failing to warn the Plaintiff concerning the dangerous hazards, risks and effects of the drug."

upon him the product manufacturer's liability.

In addition, as support for his argument that the court of appeals created a separate claim of failure to warn, Bowman now refers to Instructions 11, 11A, 22 and 30. However, only Instructions 11A and 22 were challenged by Bowman at trial. Thus, he waived appellate review of Instructions 11 and 30,[4] and we will consider only Instructions 11A and 22.[5]

We conclude that Instructions 11A and 22, when considered together with the other instructions[6] and the evidence, merely provided two different bases on which Songer could have succeeded under his medical malpractice claim, rather than two different claims for relief. Thus, we agree with the court of appeals that the jury instructions, while not a model of clarity, were generally adequate. *Songer*, 804 P.2d at 263–64.

## IV.

In summary, we hold that a motion for reconsideration of an order granting a new trial is not governed by C.R.C.P. 59, since such order is not a final judgment. We also conclude that the instructions and evidence pertaining to the doctor's failure to warn fell under the plaintiff's claim of negligence and did not create a separate "failure to warn" claim for relief. The judgment of the court of appeals is therefore affirmed.

VOLLACK, J., does not participate.

---

**4.** C.R.C.P. 51 states that: "All instructions shall be submitted to the parties, who shall make all objections thereto before they are given to the jury. Only the grounds so specified shall be considered on motion for a new trial or on appeal or certiorari." C.R.C.P. 51, 7A C.R.S. (1990). *See generally Phillips v. Komornic,* 159 Colo. 335, 411 P.2d 238 (1966); *Sharoff v. Iacino,* 123 Colo. 456, 231 P.2d 959 (1951); *Williams v. Farmers Ins. Group, Inc.,* 781 P.2d 156, 160 (Colo.App.1989), *aff'd,* 805 P.2d 419 (Colo.1991).

**5.** Instruction 11A stated in relevant part:

In order for the plaintiff to recover from the defendant on the claim for failure to warn, you must find

(1) The defendant prescribed topical Oxsoralen;

(2) The defendant negligently failed to warn of the dangers of the drug;

(3) The defendant's negligent failure caused the plaintiff's injuries.

If you find all three propositions proven, then your verdict on this claim must be for the plaintiff.

Instruction 22 stated:

Once evidence has been presented indicating that the patient was not warned, the physician must establish by the evidence that the failure to warn was what a reasonable physician practicing in the same field of practice as a specialist at the same time would have done under the same or similar circumstances, as shown by expert testimony.

**6.** Instruction 32 which was submitted to the jury stated that the instructions were to be "taken, read and considered together."