[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT
CT Page 9829
The plaintiff has filed a motion to set aside the verdict based on four grounds. At trial the plaintiff testified that he was injured as the result of an automobile accident which occurred on January 12, 1999. He said that he had been traveling on I-395 behind a jeep. When that vehicle's brake lights came on he drove into the breakdown lane to avoid a collision; he and the jeep had both been traveling in the right lane of the highway. The plaintiff further testified that the highway was slippery and prior to pulling his car over he and the vehicle in front of him were traveling between 20 and 25 miles per hour. He testified he realized the road was slippery when the jeep suddenly slid in front of him. He then took his foot off the accelerator and tapped his brakes. Two or three seconds after pulling into the breakdown lane, the plaintiffs vehicle was rear ended by the defendant's vehicle.
The defendant was operating a van owned by his employer at the time of the accident. He drove to a commuter lot after leaving home, the weather was cold and "misty". Once he got to the lot he noticed the road conditions were "slick". The temperature, according to the plaintiff, was cold but not freezing. When he entered I-395 he noticed that the highway surface was slick, there was water on the highway and there was mist. His vehicle never slid prior to the accident and he denies seeing any ice on the highway. The plaintiff said when he got out of the van the road was slick, slippery and icy. A state trooper who investigated the accident testified it was raining at the time of the accident and there was ice on the road. The trooper testified that there were icy conditions when he got to the accident scene at 8:00 AM, but he could not recall the road condition when the accident happened at 5:45 AM.
Prior to the accident, the defendant said he did not notice any other vehicles sliding. He said he was operating his vehicle at 45 mph on I-395 which was the speed of travel of other vehicles on the highway. The defendant further said about a quarter of a mile before the accident he slowed his vehicle down to 35 mph along with other traffic on the highway.
Just before the accident he noticed that two vehicles in front of him slipped a little and a lot of brake lights came on. He noticed the plaintiffs vehicle at that time, it "slipped slightly" and its brake lights came on. When he noticed all this he said he took his foot off the accelerator and "slowly started to pump the brakes." At that point he noticed conditions were icy, there was "black ice" — he never actually saw it, his 8700 pound vehicle just began to slide. He lost control and hit the plaintiffs car. When he tapped the brakes, he lost CT Page 9830 control. At trial the defendant said he did not put his car into reverse when he began to slide, but admitted at his deposition he said he "may" have. He also testified he "downshifted" the van when he began to slide. He too tried to go to the breakdown lane because he wanted to get on the grass where there would be better traction. He did not sound his horn prior to the collision; the defendant said, "there was so much stuff going on" and he was "trying to slow the van down." He also did not flash his lights.
At one point in his testimony, the plaintiff said that he knew there was a possibility of black ice on the highway. Also during the trial he was impeached by deposition testimony and statements he made to a police officer. He told the officer he was traveling at 45 mph, not alluding to the 35 mph speed he claims he reduced his speed to just before the accident. Also deposition testimony was referred to where he said that he actually knew the highway was icy. The defendant, when confronted with this, maintained his trial testimony was accurate and the impeachment material resulted from mistake or confusion on his part.
These constitute the basic facts of the case as they relate to the accident and what the drivers and their vehicles were doing prior to the accident.
 (1)
The plaintiff first argues the verdict was against the great weight of the evidence. Certainly, the defendant was impeached, and quite effectively by an experienced trial lawyer. But a witness can try to explain away his impeachment and a jury can choose to believe the explanations and the positions taken at trial as opposed to the impeachment material.
The jury could have chosen to believe the defendant's trial testimony that on I-395 he was traveling at 45 mph and slowed down to 35 mph before the accident. They could have further chosen to believe that he did not realize the roadway was icy until the accident was developing and it was too late to do anything about it. It is also not clear to the court how flashing lights or sounding of his horn could have prevented this accident, the events were instantaneous and a jury could have certainly believed that such maneuvers would have come too late to prevent an accident.
Even given the defendant's testimony that he believed there was a possibility of black ice on the roadway and even if the jury concluded he, in fact, knew the road was icy, the court cannot say as a matter of law that the jury could not further conclude that driving at the speeds CT Page 9831 he testified to the defendant was acting without negligence. The jury could have concluded, therefore, either the defendant did not actually realize there was ice on the road until immediately before the collision and the accident was due to these icy conditions not his negligent driving or that even if that latter supposition is not true his speed was reasonable under all the circumstances.
The case is rare indeed, where summary judgment in a motor vehicle negligence case is appropriate or a motion to set aside a verdict in the defendant's favor after trial should be granted just based on evidentiary considerations.
The defendant had a right to a jury trial and the court cannot substitute its judgment for that of the jury. Our Supreme Court has said a verdict should be set aside only if "the jury cannot reasonably and legally have reached their conclusion." Bound Brook v. Norwalk,196 Conn. 660, 667 (1986). The court cannot say that here in light of the liberty the jury had to find facts in such a way as were favorable to the defendant.
 (2)
Given the predicate facts that the jury could have found favorable to the defendant and discussed in the foregoing section, the court cannot accept the plaintiffs position that giving the jury a charge on skidding was error. Our cases make clear that skidding such as occurred before the impact in this case "is not, in and of itself evidence of negligence."Amato v. Sawicki, 159 Conn. 490, 493 (1970); see also Lowell v. Daly,148 Conn. 266, 273 (1961). It has also been held as a necessary corollary that rear end collisions can occur other than as a result of driver negligence. Wrinn v. State, 35 Conn. App. 464, 467 (1994), aff'd234 Conn. 401 (1995). Because of this case law, the court was obligated, given the disputed facts of this case, to give a charge on skidding. In its charge, the court told the jury that the mere fact that the defendant's's car skidded prior to the impact with the plaintiffs vehicle did not necessarily establish that the defendant was operating in a negligent manner. But the jury was also told that if the skidding was caused by the alleged negligent actions of the defendant then the defendant would be charged with negligence.
Failure to give a skidding charge in this case despite the fact that negligence of the defendant was reasonably in contention would have been tantamount to allowing the jury to consider skidding in and of itself as an independent basis for a finding of negligence. This does not appear to be the law in our state. CT Page 9832
 (3)
The plaintiff also argues that the verdict must be set aside because it was influenced by prejudice or partiality. Fink v. Golenback,238 Conn. 183, 207-08 (1996). In fact, during the trial the court pointed out to counsel that the jury seemed unhappy or upset or disturbed at the length of the trial and this could prejudice the plaintiff. But there is no evidence that the jury acted in any way that was actually unfair to the plaintiff. Perhaps more to the point, the jury was told Friday afternoon that they could deliberate or they could return on the following Tuesday to consider the case. They decided to come back on Tuesday, hardly the actions of a jury bent on prejudicing either party or interested in rushing to judgment.
But the point really is that the court's concerns, which were meant to assist counsel, were made known during the trial but no motion for mistrial was made nor was there a request to question the jurors or for the court to take any other action. A party cannot be informed of a matter like this or otherwise be aware of it during trial, request no action or relief from the court and then after it receives an unfavorable verdict move that it be set aside, cf Bernier v. National Fence Co.,176 Conn. 622, 628 (1979); Yates v. Sullivan, 137 Conn. 253, 263 (1950).
In fact, the claim being made is somewhat nebulous. Should a court faced with a claim such as this engage on a general fishing expedition and proceed to question individual jurors to see if any prejudice resulted to the plaintiff? No request has ever been made for such a procedure during trial or post-trial. Just on the basis of the observations communicated by the court to counsel during trial there was no basis for a mistrial. If that was true then and since then nothing has transpired except a defendant's verdict, how can the court fairly set aside the verdict — what is the relevant evidence to lead the court to conclude a mistrial would not have been appropriate but a motion to set aside is now appropriate? To pose the question is to provide the answer. The court cannot set aside the verdict on this ground.
 (4)
The plaintiff also basis his motion on an interesting argument to the effect that the court committed error in refusing to admit into evidence warnings contained in the owner's manual for the vehicle being operated by the plaintiff. Two pages of the manual contained specific warnings relevant to this case. The manual indicated the following:
"Drive cautiously on slippery roads:
CT Page 9833 • Do not move the steering wheel quickly;
• Drive more slowly than you normally would;
• Give your vehicle more distance to stop;
 • Pump the brake pedal steadily and evenly to avoid locking you front wheels."
Additionally, the manual contained the following advice:
 "Warning: To avoid skidding and losing control on slippery roads, do not downshift into low when you are moving faster than 20 mph (30 km/h)"
The plaintiff argues that "the defendant actually downshifted the vehicle's automatic transmission into low when traveling between 35 and 45 mph and moved the steering wheel quickly." All of this is contrary to the warnings contained in the owner's manual" and this evidence should have been before the jury as they tried to determine if the defendant operated his vehicle negligently. The plaintiff also states "furthermore, the jurors should have been able to decide if the defendant was negligent in not reading these warnings or was negligent in reading these warnings but failing to operate his vehicle in conformity with the same. . . ."
A hearing outside the presence of the jury was held regarding the introduction of this driver's manual into evidence.
Although counsel for the plaintiff referred to other warnings in the manual, he emphasized that the "salient" point or warning that the jury should be informed about was the explicit warning against downshifting. The court will now discuss the plaintiffs position.
First, the court would observe that it cannot be seriously argued that the mere failure to read such a driver's manual, apart from whether and how the contents of any particular part of the manual had anything to do with causing the accident, can constitute negligence or be evidence of negligence. The actions or failures to act of the defendant in light of the instructions on the alleged specifications of negligence should be the actual factors for the jury — whether or not some of these matters are referred to in a manufacturer's driver manual does not assist the jury in deciding whether, under the evidence and the negligence instructions given, negligence actually occurred. Pronouncements from Detroit cannot be held to have achieved the negligence per se status ascribed to our statutes. CT Page 9834
The latter point being the case some of the so-called warnings are too nebulous to be of any use to the jury in setting guidelines for decision in this particular case.
Do not move the steering wheel quickly on slippery roads — how quick is quickly and does that admonition apply when a car has already begun to slide or skid? And what evidence is there that the defendant moved his steering wheel quickly — he tried to veer toward the breakdown lane and the grass but what was the quickness of the movement?
Drive more slowly than you usually would — how slow in relation to what norm. In fact, the speed limit on I-395 was 65 mph. The defendant testified he was driving 45 mph for most of the approximately 20 miles that he was on I-395, reduced his speed to 35 mph along with other traffic prior to the accident and had enough control over his vehicle to reduce his speed to 5 miles per hour or "walking speed" just prior to the collision. That was certainly more "slowly" than he usually drove on I-395 as brought out by plaintiffs counsel. Whether it was "slow" enough for conditions existing at the time of the accident had to be determined by all the particular facts and circumstances surrounding this particular accident and the general admonition in the driver's manual offers no illumination on resolving that point.
As to giving his vehicle more distance to stop than he ordinarily would have, there was no evidence directly related to this point, or to put it another way perhaps the question of appropriate distance was what the case was all about and this platitude in the manual provides no real standard. How much distance should be allowed between cars when the approaching car is going 45 or 35 mph especially when giving the verdict every favorable inference, the jury could have found the patch of ice causing the defendant's vehicle to slide into the plaintiff was unexpected and localized to a particular spot on the highway.
As to pumping or tapping the brakes — the defendant said he did so when he started to slide (just as the plaintiff did). But that is what the manual seems to recommend and that is when he lost control or some control of the vehicle. The general warnings in the manual are not of much assistance to the plaintiff.
But the chief argument of the plaintiff is based on the fact that the defendant downshifted at some point after he began to slide and the manual specifically admonishes drivers not to downshift if a vehicle is going over 20 mph. The plaintiff sought to introduce the manual containing this admonition against downshifting and argues that the defendant's failure to read the manual on this warning — which the defendant admitted — was at least some evidence of negligence that CT Page 9835 the jury should have been allowed to consider.
This is a very interesting argument and the court could find no cases dealing with the question of whether an owner's driving manual should be introduced into evidence on the question of the standard of care and an operator's compliance with that standard.
Apart from the general merits of allowing such a manual into evidence, there are several problems presented for such a result in this case and perhaps any case where the operator is not the owner. Here the defendant did not own the vehicle he was driving, it was his employer's van and the defendant drove it to work on occasion. He did this fairly frequently over several months but it was never quite clear how often he actually did so. The question then becomes whether if we have a general rule allowing driver's manuals into evidence for the purpose indicated, should they be allowed in against a non-owner operator? How often must a non-owner operator drive a vehicle before there is an obligation placed upon the non-owner operator to demand access to the manual and a duty to read it once it is available? Will one time operation create such obligations? Is a fairly regular course of operation necessary? A veritable Pandora's box could present itself which Appellate Courts will have to sort out — should the duty be imposed only where the non-owner operator has reason to expect or actually runs into unusual whether or road surface conditions? Then perhaps the duty is only to stop driving, pull over on the shoulder and read the manual? What if the owner did not leave the manual in the car, not to worry, the nonowner operator maybe had a duty to make sure the manual was in the car before he or she started driving?
But to return to the beginning and the general merits of the plaintiffs argument, the court could find only one line of cases that may be held to have a very general analytical relevance although factually far off the mark.
The rule adopted by a number of states is that:
"Where a drug manufacturer recommends to the medical profession (1) the conditions under which its drug should be proscribed (2) the disorders it is designed to relieve (3) the precautionary measures which should be observed, and (4) warns of the dangers which are inherent in its use, a doctor's deviation from such recommendation is prima facie evidence of negligence if there is competent medical testimony that his (sic) patient's death or injury resulted from the doctor's failure to adhere to the recommendations." Mulder v.CT Page 9836 Parke Davis Co., 181 NW.2d 882, 887 (Minn., 1970). (Emphasis by this court.)
Also see Paul v. Boschenstein, 482 N.Y.S.2d 870 (1984); Ohligschlagerv. Proctor Community Hospital, 303 NE.2d 392 (Ill., 1973); Mueller v.Mueller, 221 NW.2d 39 (SD, 1974); Winkjer v. Herr, 277 NW.2d 579, 585
(ND, 1979); cf Bouman v. Songer, 820 P.2d 1110 (Colo., 1991).
The Boschenstein case points out that generally expert testimony is necessary to prove a deviation from the standard of care because a lay jury could not be expected to have an "understanding of what constitutes reasonable behavior in a complex and technical profession such as medicine." 482 N.Y.2d at p. 872. But the court goes on to say that: "With respect to the proper dosage and usage of drugs, however, it is the manufacturer and not the practitioner, who is in the best position to provide such information. . . . Prior to marketing the drug, the manufacturer is required to subject it to stringent testing to ensure its effectiveness and safety. It is the manufacturer which conducts the experiments that establishes proper dosages and methods of application, not the practitioner who of necessity must rely on information supplied by the manufacturers." Id.[1]
It is certainly true that automobile manufacturers to perform extensive testing and vehicle modifications before putting their product on the market and at least in particular instances a lay jury could not be expected to know the appropriate standard of care when a vehicle is used under certain conditions and circumstances.
But even assuming for the purpose of argument that a lay jury could not appreciate the dangers of downshifting on an icy roadway with this particular type of vehicle, which has to be the underlying predicate for applying a Mulder type rule to driving manuals, a further problem is presented under the liberal approach of the Mulder court and the cases that follow it. As noted under Mulder, deciation from the manufacturer's recommendation may be prima facie evidence of negligence but only "if there is competent medical testimony that (the) patient's injury or death resulted from the doctor's failure to adhere to the recommendations." 187 NW.2d at p. 887.
Here, there was no testimony presented, expert or otherwise, that the downshifting had anything to do with causing the defendant to lose control of the vehicle or only have limited control or even precipitated the sliding of the vehicle. The only evidence on this point comes from Mitchell and he said that he lost control when he started to tap the brakes, the downshifting came sequentially after that. The court, therefore, does not accept this final argument as a basis to set aside CT Page 9837 the verdict and the verdict is, therefore, not set aside.
Corradino, J.