Randall **ROBERTS** and Cindy
Roberts, Petitioners

v.

**AMERICAN FAMILY MUTUAL INSUR-
ANCE CO.** and American Standard In-
surance Company of Wisconsin, Respon-
dents.

No. 05SC57.

Supreme Court of Colorado,
En Banc.

Oct. 2, 2006.

Roberts Levin & Patterson, P.C., Bradley
A. Levin, Jeremy A. Sitcoff, Denver, Colora-
do and Law Office of Donald Johnson Donald
E. Johnson, Pine Junction, Colorado, Attor-
neys for Petitioners.

Harris, Karstaedt, Jamison & Powers,
P.C., A. Peter Gregory, Englewood, Colora-
do, Attorneys for Respondents.

Starrs Mihm & Caschette, LLP, Richard B. Caschette, Ross W. Pulkrabek, Denver, Colorado, Amicus Curiae for Colorado Trial Lawyers Association.

Justice COATS delivered the Opinion of the Court.

Randall and Cindy Roberts petitioned for review of the court of appeals' judgment in *Roberts v. American Family Mutual Insurance Co.*, 113 P.3d 164 (Colo.App.2004). The appellate court affirmed an order of the district court granting summary judgment in favor of American Family Mutual Insurance Company and American Standard Insurance Company of Wisconsin. The district court ruled that coverage limitations of six automobile policies issued to the Robertses by American Family and one motorcycle policy issued to them by American Standard precluded the stacking of underinsured motorist benefits provided by the individual policies. Because the anti-stacking provisions of all seven policies only apply, by their own terms, to policies issued by the same company, and the Robertses' motorcycle policy was not issued by the same company as their car policies, the existing record fails to support the district court's order in its entirety. Notwithstanding the Robertses' failure to challenge the identity of the insurance companies before the district or appellate court, the judgment of the court of appeals is therefore reversed, and the case is remanded with directions to return it to the district court for further proceedings consistent with this opinion.

## I.

This insurance coverage dispute arises from a collision between a motorcycle driven by Randall Roberts, on which his wife Cindy was riding as a passenger, and a pickup truck driven by Chet Ray. The Robertses both suffered substantial injuries as a result of the accident and filed claims against Ray. They eventually settled those claims for the $100,000 ($50,000 per person) liability limits of Ray's automobile insurance policy.

The Robertses were also insured under seven separate insurance policies of their own: one motorcycle insurance policy issued by American Standard Insurance Company of Wisconsin and six car insurance policies issued by American Family Mutual Insurance Company. All seven policies provided underinsured motorist coverage up to $100,000 per person, and the Robertses sought benefits under each of the policies. When the insurers declined to tender benefits, the Robertses sought declaratory relief, and ultimately the parties filed cross-motions for summary judgment.

The insurers conceded that underinsured motorist benefits were available under any of the Robertses' seven policies but asserted that so-called anti-stacking[1] provisions contained in each of the policies limited their liability to the underinsured motorist benefits available under any single policy. The Robertses, on the other hand, disputed any limitation of the insurers' liability, arguing that the anti-stacking provisions were insufficiently conspicuous to be enforceable. The district court agreed with the insurers, and to the extent that the Robertses' claims exceeded $50,000 per person—the difference between Ray's liability coverage and the underinsured motorist coverage of any single policy—it granted the insurers' motion for summary judgment and denied the Robertses' motion. The Robertses appealed.

Following oral argument, the court of appeals requested supplemental briefing on the question whether the car and motorcycle policies were issued by different companies and, if so, whether the anti-stacking provision, common to all seven policies, still disallowed stacking the $100,000 per person limit of the American Family car policies with the $100,000 limit of the American Standard motorcycle policy. A majority of the court, however, affirmed the trial court's order without addressing this question, on the ground that it had not been specifically presented to the trial court. One dissenting member of the three-judge panel disagreed, reasoning that because the appeal involved

1. " 'Stacking' means aggregating, combining, multiplying, or pyramiding limits of separate policies providing uninsured and underinsured motorist coverage as provided in section 10–4–609." § 10–4–402(3.5), C.R.S. (2006).

summary judgment and the interpretation of the contract itself, both of which were subject to de novo review on appeal, and because the trial court's implicit construction of the anti-stacking provisions directly impacted the reliability of the judgment, the court of appeals should have addressed the question. The dissent would have held that the order granting summary judgment was without sufficient record support.

We granted the Robertses' petition for a writ of certiorari, challenging the identity of the insurance companies as well as the conspicuousness of the anti-stacking provisions.

## II.

■ "The purpose of the summary judgment 'is to permit the parties to pierce the formal allegations of the pleadings and save the time and expense connected with a trial when, as a matter of law, based on undisputed facts, one party could not prevail.'" *Mount Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231, 238 (Colo.1984) (quoting *Ginter, Jr. v. Palmer & Co.*, 196 Colo. 203, 205, 585 P.2d 583, 584 (1978)). Although summary judgment may be a useful way of expediting matters and saving valuable resources, it is not a substitute for trial. *Id.* at 239. Because a grant of summary judgment denies the party opposing the motion a right to trial, it is appropriate *only* where there is no role for the fact finder to play *and* where the controlling law entitles one party or the other to a judgment in its favor. *Id.*

■ While it will often be the case that summary judgment is inappropriate because there remain genuine disputed issues of material fact, it may also be the case that an order granting summary judgment is improper simply because undisputed facts demonstrate that the moving party is not entitled to a judgment in its favor at all. Whether particular facts are both material and entitle one party or another to judgment are, of course, questions of law; and with regard to contractual obligations, the agreement of the parties, expressed in the terms of their contract, is the controlling law.

■ The seven policies at issue here, by their own terms, only purported to limit the insurer's liability arising from policies issued to the same insured by the same company. Other than the American Standard motorcycle policy's reference to "Two or More *Motorcycles* Insured" (emphasis added), and the American Family car policies' references to "Two or More *Cars* Insured" (emphasis added), the anti-stacking provisions of all seven policies, including coverage for underinsured motorists, were identical. All expressed their limitations on stacking in terms of "our liability under all policies issued to *you* by *us,*" and all expressly defined the terms "we, us, and our" to mean "the company providing the insurance."

Similarly, by their own terms, the motorcycle and car policies characterized themselves as having been issued by two different companies. While the six car policies all identified their issuing company as "American Family Mutual Insurance Company," the motorcycle policy identified its issuing company as "American Standard Insurance Company of Wisconsin." The American Family car policies failed to mention American Standard Insurance Company of Wisconsin, much less describe any relationship between the two differently-named companies, and the American Standard motorcycle policy similarly failed to reference American Family Mutual Insurance Company, excepting only that both the motorcycle policy and six car policies further characterized their respective issuing companies as members of the "American Family Insurance Group."

Although the statutory requirement that these insurers offer coverage for underinsured motorists would not have barred individual policies from prohibiting the stacking of coverage provided in policies issued by affiliated insurers,[2] the insurance policy itself determines the extent of agreed-upon coverage. Unlike many automobile insurance policies, *see, e.g., Estate of Curry v. Farmers Ins. Exch.*, 101 P.3d 1133, 1136 (Colo.App.

---

2. § 10–4–609(2), C.R.S. (2006) ("A policy may contain provisions which prohibit stacking ... if such provisions are included in ... multiple policies issued by one insurer or an affiliated insurer, under common ownership or management....").

2004) (using the formula: "issued to you by us or any other member company of the [insurer's group of companies]"),[3] the policies issued to the Robertses clearly prohibited no more than the stacking of benefits provided in policies issued by the same company.

The policies themselves not only indicated that the insurer of the motorcycle policy and the insurer of the car policies had different company names; they also characterized the differently-named companies as being related to each other only in the sense that both were members of the same insurance group. However "company" may be defined for other purposes, and whatever the business relationship between these entities may actually have been, it is simply not reasonable to assume that an insured party would understand a provision limiting coverage among policies issued by the same company to also limit coverage among policies issued by insuring entities ostensibly identified as different companies, merely because they are part of the same "insurance group." *See Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002) (noting that words of contract should be given their plain meaning based on common usage, and courts should be careful to avoid strained constructions).

There was no dispute about the validity of the policies insuring the Robertses or the terms in which those policies were expressed. The anti-stacking language upon which the movants relied to prohibit the stacking of the underinsured motorist limits of the six car policies simultaneously made the anti-stacking provision inapplicable to policies issued by different companies. As the controlling law, the very policy language that entitled American Family to summary judgment with regard to the six car policies therefore made summary judgment in favor of the insurers inappropriate with regard to claims not exceeding the combined limits of a car policy and the motorcycle policy.

**3.** Similarly, the "Two or More Cars Insured" provision included in the record as part of the *tortfeasor's* liability policy includes language to expand the limitation on stacking to policies issued by member companies:

With respect to any *accident* or *occurrence* to which this and any other auto policy issued to

## III.

■ We have often noted that issues not presented to or raised in the trial court will not, as a general matter, be considered on appeal. *See, e.g., Beauprez v. Avalos*, 42 P.3d 642, 649 (Colo.2002). This broad proposition derives from a number of specific policies and court rules which, although not all-inclusive, are extensive. In particular, we have declined review for failure to comply with various rules of evidence and procedure dictating precisely how and when defenses and objections to pleadings must be presented, *see, e.g., Christensen v. Hoover*, 643 P.2d 525, 531 (Colo.1982) (declining review for failure to comply with C.R.C.P. 12(b) ); *Bd. of County Comm'rs v. Dist. Court*, 172 Colo. 311, 313–14, 472 P.2d 128, 129–30 (1970)(same); dictating how and when motions for judgment must be made, *see, e.g., Sharoff v. Iacino*, 123 Colo. 456, 459–60, 231 P.2d 959, 961–62 (1951) (declining review for failure to state specific grounds for directed verdict, as required by C.R.C.P. 50); dictating how and when objections to jury instructions must be registered, *see, e.g., id.* (declining review of jury instructions for failure to object before instructions given to jury, as required by C.R.C.P. 51); dictating how and when objections to evidentiary rulings must be made, *see, e.g., Hancock v. State*, 758 P.2d 1372, 1377 (Colo.1988) (declining review for failure to contemporaneously object to admission of evidence, as required by C.R.E. 103(a)); and dictating how and when proposed assignments of error for appeal must first be presented to the trial court in a request for new trial, *see, e.g., Matthews v. Tri–County Water Conservancy Dist.*, 200 Colo. 202, 206, 613 P.2d 889, 892 (1980) (declining review for failure to preserve assignment of error as required by former C.R.C.P. 59(f) ).

While a party may still be estopped from asserting on appeal a position contrary to one he took at trial or in which he later

you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

acquiesced, *see Horton v. Suthers,* 43 P.3d 611, 620 (Colo.2002) (Coats, J., concurring); *McMullin v. Magnuson,* 102 Colo. 230, 244–45, 78 P.2d 964, 971 (1938), Colorado's former rule of procedure, mandating that all appellate issues be preserved by presenting them to the trial court in a motion for new trial, has long been abolished. *See* C.R.C.P. 59(b) (adopted Aug. 23, 1984); C.R.C.P. 59(f) (repealed Aug. 23, 1984). Similarly, our extant rule replacing formal exceptions with an obligation to make known to the court, at the time of its ruling or order, any desired action or objection and the grounds therefore, applies only to court rulings as to which formal exception was formerly required. *See* C.R.C.P. 46. At the time of their abolition, formal exceptions were required neither for rulings on demurrers and other motions on the pleadings, *see* Code of Civ. P., Colo. Stat. Ann., vol. 1, ch. 38 § 422 (1935), nor for summary judgments, which came into existence simultaneously with the abolition of the exception requirement. *See* C.R.C.P. 46 & 56 (originally adopted Jan. 6, 1941).

■ Perhaps most importantly, however, even before abolition of the requirement for formal exceptions, this court had already reserved to itself the discretion to notice any error appearing of record, whether or not a party preserved its right to raise or discuss the error on appeal. *See* Sup.Ct. R. 35, Colo. Stat. Ann., vol. 1 (1935) (appearing as early as Supreme Court Rule 15 (1887), and currently applied to all appellate courts by C.A.R. 1(d) ). Particularly with regard to matters having broad impact or directly affecting the validity of judgments, such as the constitutionality of statutes and related issues, we have at times found it appropriate to address even claims that were never presented to the trial courts. *E.g., Anaya v. Indus. Comm'n,* 182 Colo. 244, 247, 512 P.2d 625, 627 (1973); *Robinson v. People ex rel. Zollinger,* 173 Colo. 113, 116, 476 P.2d 262, 263 (1970). Whether or not a particular rule of practice or procedure would have required a more specific or timely objection, it has therefore long been within the discretion of appellate courts to address an error appearing of record; and under the circumstances of this case, the trial court's failure to distinguish, in its order granting summary judg-

ment, the insurance policies issued by American Family from the one issued by American Standard should have been addressed after being noticed by the court of appeals.

Non-moving parties clearly have an obligation to bring disputed issues of fact to the attention of a trial court ruling on a motion for summary judgment. C.R.C.P. 56(e); *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir.1998); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Witbeck v. Embry Riddle Aeronautical Univ.,* 219 F.R.D. 540, 546–49 (M.D.Fla.2004) (discussing distinction between parties' duties and court's duties in identifying genuine issue of material fact); *cf. Greenwood Trust Co. v. Conley,* 938 P.2d 1141, 1149 (Colo.1997) ("[B]ecause neither party has disputed the competence or admissibility of the evidentiary materials offered in support of and in opposition to the summary judgment motion, we may consider all of this record evidence in our analysis."). However, the error at issue here involves neither a matter of fact nor even a question whether genuine issues of fact are in dispute. It involves a question of contract construction, a matter of law as to which no deference is to be shown by reviewing courts. *Huizar,* 52 P.3d at 819.

Furthermore, the dispositive policy provision was neither one that was never brought to the court's attention nor one whose validity or scope was limited by other provisions—constitutional, statutory, or contractual—of which the court was never made aware. *See Estate of Stevenson v. Hollywood Bar & Café,* 832 P.2d 718, 721 n. 5 (Colo.1992). The dispositive provisions in this case were in fact erroneously relied upon by the trial court as authority for granting summary judgment in the first instance.

The Robertses always opposed the insurers' motion for summary judgment and never acquiesced in the district court's order granting it. They simply failed to identify and challenge the construction of the anti-stacking provision's identity requirement implicit in the court's order and offer a different interpretation. Appellate courts are, however, not limited to the constructions of control-

ling law relied upon by the lower courts or offered by the parties. At least where a misreading of the controlling law leads a trial court to grant summary judgment in the face of undisputed facts to the contrary, a reviewing court cannot be constrained by the failure of a party to specifically identify the misreading and bring it to the trial court's attention. *Cf. Mount Emmons Mining Co.*, 690 P.2d at 238 ("Although [appellant] has not questioned the factual sufficiency of the record, this court may nevertheless notice errors appearing of record, C.A.R. 1(d), especially when these errors are of a fundamental character affecting the reliability of the judgment itself.").

## IV.

On appeal, the Robertses also challenged the grant of summary judgment with regard to the six car policies, arguing in reliance on authority from other jurisdictions that their anti-stacking provisions were insufficiently conspicuous to be enforceable. *See, e.g., Haynes v. Farmers Ins. Exch.*, 32 Cal.4th 1198, 13 Cal.Rptr.3d 68, 89 P.3d 381, 388–89 (2004) ("[C]onspicuousness ... refers to how a coverage-limiting provision actually has been positioned and printed within the policy at issue."). As both the trial court and the court of appeals rightly observed, however, the anti-stacking provisions at issue here were separately titled and positioned with sufficient prominence to satisfy virtually any requirement of conspicuousness, and they were unambiguous according to existing precedent in this jurisdiction. In order to affirm the enforceability of the coverage-limiting provisions of the six car policies issued by American Family under these circumstances, it is therefore unnecessary for this court to decide whether any special requirement of conspicuousness applies to coverage-limiting provisions of insurance contracts in this jurisdiction.

## V.

The record establishes, as a matter of law, that the Robertses' motorcycle policy was not issued by the same company as their six car policies and that the anti-stacking provisions of all of the policies were enforceable by their terms. Because the record does not support the district court's summary judgment order in its entirety, the judgment of the court of appeals is reversed, and the case is remanded with directions to return it to the district court for further proceedings consistent with this opinion.