**Joseph WITBECK, Plaintiff,**

v.

**EMBRY RIDDLE AERONAUTICAL UNIVERSITY, INC., Defendant.**

**No. 6:02–CV–739–ORL–18DAB.**

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 13, 2004.

 

Barney John Cummins, Cummins & Bass, P.A., Ft. Lauderdale, FL, Joseph Witbeck, pro se, Nassau, NY, for Plaintiff.

Thomas J. Leek, Robert Taylor Bowling, Cobb & Cole, Daytona Beach, FL, for Defendant.

## ORDER

G. KENDALL SHARP, District Judge.

THIS CAUSE comes before the Court on Defendant Embry Riddle Aeronautical University, Inc.'s motion for final summary judgment (Doc. 54, filed 21 October 2003) and memorandum of law in support thereof (Doc. 55, filed 21 October 2003), to which Plaintiff Joseph Witbeck has responded (Doc. 70, filed 14 November 2003); and Plaintiff's motion to dismiss (Doc. 77, filed 5 December 2003), to which Defendant has responded (Doc. 80, filed 12 December 2003).

### I. BACKGROUND

In the summer of 2000, Plaintiff Joseph Witbeck ("Witbeck"), who was to enroll that fall in Embry Riddle Aeronautical University ("ERAU"), formally requested services of ERAU's Office of Disability Services because, he told the school, he had Central Auditory Processing Disorder ("CAPD"). Witbeck alleges that over the next two years ERAU gave him untimely or otherwise inadequate support for his disability, and that a professor subjected him to at least one humiliating comment. He alleges this caused him much anguish and failure at ERAU, forcing him to withdraw in 2001. He alleges that he was a qualified person with a disability within the meaning of the Rehabilitation Act, that ERAU is an entity subject to the Act, and that ERAU's failure to properly accommodate his disability was an act of illegal discrimination under the Act. 29 U.S.C. § 794 (2001 & Supp.2003). (Doc. 1, filed 28 June 2002.)

### II. DISCUSSION

#### A. Voluntary Dismissal

Witbeck moved to voluntarily dismiss this suit less than two months before trial was scheduled and after ERAU's motion

for summary judgment was already under consideration. (Doc. 77, filed 5 December 2003.) Witbeck had fired his lawyer and asserted that there was not enough time to find another. If the "defendant will suffer some plain prejudice other than the mere prospect of a second lawsuit," it is within the Court's discretion to grant a voluntary dismissal without prejudice under Rule 41(a)(2), but such a dismissal is "not a matter of right." *Fisher v. Puerto Rico Marine Mgmt., Inc.,* 940 F.2d 1502, 1502–03 (11th Cir.1991); Fed.R.Civ.P. 41(a)(2) (2001 & Supp.2003).

It is not simply the prospect of another suit that would prejudice ERAU here. It notes that it has expended considerable resources in litigating this suit up to now. The Court granted a motion to extend the parties' time to file a Joint Pretrial Statement to allow Witbeck more time to find another lawyer. (Doc. 79, filed 9 December 2003.) To dismiss at this stage, when the summary judgment motion is already under consideration, would prejudice ERAU. Witbeck's motion to dismiss is accordingly denied.

### B. Summary Judgment Standard

A court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2003). Material facts are those that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the record as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Genuine disputes of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

The moving party bears "the initial responsibility of informing the ... court of the

basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy its burden. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548.

When the non-moving party has the burden of proof at trial, the moving party may meet its initial burden in one of two ways. The moving party may support the motion by directing the Court's attention to affirmative evidence "that negates an essential element of the non-moving party's claim." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–16 (11th Cir.1993); *Celotex,* 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting).[1] Alternatively, the moving party may point out to the court the "absence of evidence to support the non-moving party's case." *Id.* at 324, 106 S.Ct. 2548.

If the moving party shows the absence of a genuine material fact that is triable, in either of these ways, and that it is entitled to judgment, the burden shifts to the non-moving party to make a sufficient showing to establish the essential elements of his case with respect to which she has the burden of proof. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In contrast to the moving party, the non-moving party may not rest solely on his pleadings to satisfy this burden and escape summary judgment. *Id.* at 324, 106 S.Ct. 2548. He must designate evidence within depositions, answers to interrogatories or admissions that indicates that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

---

1. Justice Brennan agreed with the plurality's analysis of the standard for summary judgment in *Celotex.* He dissented on the basis of the facts of the case.

## C. CAPD

■ Witbeck alleges that, at the time he enrolled at ERAU in the fall of 2000 until the time he left in 2001, he was disabled because he had CAPD. He states that he was diagnosed with the disorder in 1996, at the age of 14, by Dr. Nathan Naparstek. (Doc. 1 at ¶ 11.) He alleges that, in violation of the Rehabilitation Act, ERAU failed to properly accommodate this disability, causing him to fail at the school. (*Id.* at ¶ 105.) Witbeck would thus have the burden at trial to prove that (1) ERAU is an entity covered under the Rehabilitation Act; (2) Witbeck was disabled when he attended ERAU; (3) he was an otherwise qualified individual; and (4) he was discriminated against by a ERAU; (5) solely because of his disability. 29 U.S.C. § 794 (2001 & Supp.2003); *Alexander v. Choate,* 469 U.S. 287, 299–302, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (holding that failure to make reasonable accommodation to a qualified disabled person is actionable discrimination under the Rehabilitation Act). As a matter of law, then, if Witbeck was not disabled when ERAU allegedly discriminated against him, he cannot recover pursuant to this sort of claim under the Rehabilitation Act. ERAU, moving for summary judgment, argues that Witbeck will be unable to prove that he had CAPD, his only alleged disability, when he was attending ERAU. (Doc. 55 at 3–5.)

For purposes of this summary judgment motion, the parties agree on the following definition of CAPD:

> CAPD is a physical hearing impairment which affect [sic] the hearing system beyond the ear, where meaning is extracted from non-essential background sound and delivered to the intellectual centers of the brain. An individual with CAPD suffers a reduced or impaired ability to discriminate, recognize or comprehend auditory information. He or she experiences difficulty listening to or comprehending auditory information despite exhibiting normal peripheral hearing sensitivity. This problem is most pronounced when the auditory signals are compromised by distortion, competition, poor acoustic environment or other reduction in signal clarity, strength or information content. Words may be drowned-out by other noises. Some words may sound like completely different words or as meaningless strings of verbiage.[2] The CAPD students frequently misunderstand oral instructions or questions, need reiteration of directions or information, and experience difficulty understanding in the presence of the slightest background noise. CAPD students experience greater problems when the acoustic environment is less than ideal such as in an open classroom.

(Doc. 1 at 3, n. 1; Doc. 55 at 3, n. 4.)

To meet its initial burden at summary judgment, ERAU points to both affirmative evidence in the record that Witbeck did not suffer from CAPD at the relevant time, and to a dearth of evidence that he did suffer from it. As affirmative evidence, ERAU points first to the affidavit and report presenting the testing and conclusions of Dr. Olander. Dr. Olander is a licensed and practicing psychologist who interviewed Witbeck twice in 2003 and reviewed his medical and psychological history. Her review encompassed the results of a test conducted in 1999. (Doc. 55, Exhibit B, Affidavit of Jacquelyn Olander, Ph.D.)[3]

Dr. Olander also conducted several tests of her own during the 2003 evaluation that are "normally relied upon by psychologists in forming opinions as to a patient's disability." (*Id.* at 2–3.) On "all measures of auditory processing," Witbeck's scores were "in the average range." The tests on which he performed within the average range included "measures on a phonemic awareness and on

---

**2.** The following portion of Witbeck's definition is excluded from ERAU's: "The CAPD student characteristically 'answers the wrong question' or asks for information which most students would have been able to infer from what was covered orally by the instructor." (Doc. 1 at 3, n. 1.) Witbeck did not object to this omission, and it is immaterial.

**3.** In his deposition, Witbeck acknowledged that he had not been tested between 1999 and 2003. (Doc. 58, Deposition of Joseph Witbeck, at 16–19 and Exhibit 1.)

auditory processing indices .... and a measure which assessed his ability to identify auditory information when other distracting noises were given." (*Id.* at 14.) Dr. Olander concluded that these results "were inconsistent with a central auditory processing deficit." (*Id.*)

In her affidavit, Dr. Olander restated and reviewed results of Diagnostic Vocational Evaluation conducted on Witbeck on August 17, 1999 by Jill Garber, M.S., CRC. (*Id.* at 1, 6.) ERAU also brought to the Court's attention a copy of part of the 1999 report already in the record. (Doc. 55 at 13, citing Doc. 58, filed 21 October 2003, Deposition of Joseph Witbeck, at 16–19 & Exhibit 1.) Dr. Olander, looking at that report, concluded that in 1999, Witbeck "also obtained an Auditory Processing Index score within the average range." (Doc. 55, Exhibit B at 14.)

Dr. Olander concludes that Witbeck "performed in the average range on the auditory processing indices administered at my office. This result of my testing is consistent with test results were provided [sic] to me from 1999 reflecting Mr. Witbeck's auditory processing abilities to be in the average range as well." (Affidavit of Dr. Olander at 14–15.) Dr. Olander is "of the opinion, within a reasonable degree of psychological certainty, that [Witbeck] does not suffer from [CAPD] now and did not suffer from CAPD in 1999 prior to his enrollment at ERAU. [She is] of the further opinion that Mr. Witbeck did not suffer from CAPD in 2000 or 2001 while attending ERAU." (*Id.* at 15.) [4]

ERAU also points to the record to reveal that there is a *lack* of evidence to support Witbeck's allegation: Witbeck has taken no depositions and disclosed no expert testimony, and only the complaint, according to ERAU, contains any positive statement of Witbeck's being diagnosed with CAPD. (Doc. 55 at 3.) Even that reference, ERAU correct-

ly argues, is to an irrelevant 1996 diagnosis. (Doc. 55 at 3, citing Doc. 1 at 3.) ERAU's presentation of the record shows that Witbeck cannot establish an element essential to his Rehabilitation Act claim. Unless Witbeck can show the Court that there is a genuine issue, ERAU is therefore entitled to judgment as a matter of law.

Because ERAU has met its initial burden, in order to prevent summary judgment Witbeck must "designate in the record, beyond the pleadings, 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). Witbeck fails to do this. In his memorandum in opposition to summary judgment, Witbeck argues with Dr. Olander's conclusion, based on her review of results obtained from tests Witbeck underwent in 1999 and on her own tests, that Witbeck did not have CAPD when he enrolled in ERAU. (Doc. 70 at 3–4.) In support of his assertions that Dr. Olander's conclusion is wrong, Witbeck highlights portions of the 1999 tests in which Witbeck performed at lower than the 50th percentile. (*Id.*)

These arguments made in a legal memorandum do not constitute admissible evidence in a form that satisfies the requirements of Rule 56(e). *L.S.T. Inc. v. Crow,* 834 F.Supp. 1355, 1361 (M.D.Fla.1993), *rev'd on other grounds by L.S.T., Inc. v. Crow,* 49 F.3d 679 (11th Cir.1995). Analysis of psychological testing in the form of, for example, an expert affidavit that satisfied the requirements of Rule 56 might raise an issue of fact. In this form, however, the arguments are not evidence that can defeat ERAU's properly supported summary judgment motion. *Id.* Witbeck does not question Dr. Olander's qualification as an expert, makes almost no objection to any other evidence marshaled by ERAU,[5] and does not designate a single

---

4. Acknowledging that Witbeck was diagnosed with CAPD in 1996 by Dr. Naparstek, Dr. Olander offers a possible explanation for the change in diagnosis from 1996 to when Witbeck entered ERAU: "[I]t is recognized that auditory processing can be positively impacted by maturation and increased language development." (*Id.* at 14.) It is thus possible "that Mr. Witbeck's maturation and language skills have positively impacted his

central auditory processing abilities." (*Id.* at 14–15.)

5. Witbeck did file a motion to strike Dr. Olander's report because some of her tests were allegedly outside of the scope of the Court's order to examine Witbeck for CAPD. (Doc. 66, filed 6 November 2003, at 2.) Witbeck specifically objects to any reference to the results of the Minnesota Multiphasic Personality Inventory–I,

piece of evidence from which the Court may fairly infer that a genuine factual issue remains as to Witbeck's disability in 1999, 2000, or 2001.

The evidence that ERAU has designated for the Court's attention, which Witbeck counters with no evidence to the contrary, clearly shows that ERAU is entitled to summary judgment. There is no question that Witbeck need not have submitted any *new* evidence with his response, or deposed his own witnesses, but having designated no specific facts in the record showing a genuine issue for trial, he cannot resist summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

### D. Identifying Genuine Issues

The Court of Appeals for the Eleventh Circuit would, however, give this Court more to go on than that which the parties have designated. In this Circuit, district courts are directed to conduct an independent review of the case file in search of evidence in support of a non-moving party's position that the non-moving party may have neglected to point out:

> We note that a court can only enter a summary judgment if everything in the record pleadings, depositions, interrogatories, affidavits, etc. demonstrates that no genuine issue of material fact exists. Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention the [sic] court must consider both before granting a summary judgment.

*Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410–11 (5th Cir.1980) (citing *Higgenbotham v. Ochsner Found. Hosp.,* 607 F.2d 653, 656 (5th Cir.1979)); *Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir.1986).

Under the *Keiser* rule, thus, the Court of Appeals would have this Court peruse all of the papers on file in this case and presumably also would have the Court consider evidence it happened upon accidentally, at the urging of neither party, even though the Court did not conduct an independent search. As will be discussed below, this interpretation of district courts' duty with regard to summary judgment procedure contradicts the law assigning to parties the duty to designate facts in dispute with specific reference to evidence. Moreover, most other circuits have either never assigned to judges a duty to conduct an independent search, or have repudiated the duty in light of the Supreme Court's "trilogy" of summary judgment cases. Furthermore, the *Keiser* rule is unevenly followed by district courts in the Eleventh Circuit,[6] and was last acknowledged by the Eleventh Circuit in 1987. *Clinkscales v. Chevron U.S.A., Inc.,* 831 F.2d 1565, 1570 (11th Cir.1987).

Although the rule has not been explicitly overruled in the Eleventh Circuit, it has clearly lost force over the years. Because of this and because the rule conflicts with notions of fairness and efficiency, the Court did not peruse the entire file in the instant case, and the Court will ignore two papers in the record it accidentally came upon though they suggest the possible existence of evidence in favor of Witbeck's position that there is a genuine dispute regarding his disability.[7]

---

Millon Clinical Multiaxial Inventory–III, and Beck Depression Inventory–II tests Dr. Olander conducted. (*Id.*) These arguments are reiterated in Witbeck's memorandum filed in response to the motion for summary judgment. (Doc. 70 at 3.) The motion to strike was filed without a memorandum of law and without conferring first with defense counsel, in violation of Local Rule 3.01. Witbeck offers the Court nothing but his own assertions to support his conclusion that these three tests were outside the scope of the court's order for an expert examination of his disability. Were the tests indeed outside the scope and had nothing to do with whether Witbeck had CAPD, moreover, the Court would only disregard the results of the three tests, leaving several unquestioned tests and Dr. Olander's

conclusion which has not been contradicted by any evidence. The motion to strike is accordingly denied.

**6.** *Compare, e.g., Scherer v. Laborers' Intern. Union of N. Am.,* 746 F.Supp. 73, 76 (N.D.Fla.,1988) (court may not neglect to consider documents not singled out by counsel for special attention), *with Lawrence v. Wal–Mart Stores, Inc.,* 236 F.Supp.2d 1314, 1322 (M.D.Fla.2002) (trial court no longer has a duty to search the entire record to establish absence of genuine issue of material fact).

**7.** Two letters are attached to ERAU's motion for summary judgment as part of ERAU's Exhibit A, but neither party noted their existence. The first,

### 1. The Parties' Duties

The Eleventh Circuit has repeatedly stated that the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis of its motion, *and identifying those portions of* 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *See, e.g., Livernois v. Medical Disposables, Inc.,* 837 F.2d 1018 (11th Cir.1988) (emphasis added); *Owen v. Wille,* 117 F.3d 1235 (11th Cir.1997); *Jeffery v. Sarasota White Sox,* 64 F.3d 590 (11th Cir. 1995); *Bald Mountain Park, Ltd. v. Oliver,* 863 F.2d 1560 (11th Cir.1989).

Similarly, the Eleventh Circuit has stated that once the moving party has met this burden, the non-moving party must also point to specific facts in the record. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116–17 (11th Cir.1993) (when moving party shows absence of evidence, non-moving party must "*show that the record in fact* contains supporting evidence or come forward with additional evidence sufficient to withstand a directed verdict motion at trial") (emphasis added); *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir.2001) (non-moving party must "*specify facts . . .* confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file' ") (emphasis added); *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir.1994) ("non-moving party must either *point to evidence in the record* or present additional evidence") (emphasis added). This Court's Case Management and Scheduling Order, moreover, advised that "[b]oth the moving party and the party opposing summary judgment shall provide pinpoint citations to the pages and lines of record supporting each material fact. General references to a deposition are inadequate. . . ." (Doc. 15, filed 18 September 2002, at 5, § H.)

This Eleventh Circuit law reflects that the "need to respond with specific facts" by evidence is "well established" after the Supreme Court's "trilogy" [8] clarifying parties' burdens at summary judgment. *Accord Adler v. Wal–Mart Stores,* 144 F.3d 664, 670–72 (10th Cir.1998); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 916 n. 8 (5th Cir.1992); *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1033–34 (D.C.Cir.1988); 11 James Wm. Moore et al., *Moore's Federal Practice* ¶ 56.11 (2003).

In *Anderson,* for example, the Court made clear that the non-moving party cannot rest on "mere allegation or denial," in response to a moving party who has met his burden, but

---

dated 1 November 2000 and addressed to an ERAU official, is from Dr. Nathan Naparstek, a licensed psychologist. In it, he states that he "diagnosed Joseph Witbeck with Attention Deficit Hyperactivity Disorder–Predominantly Inattentive Type and Central Auditory Processing Deficits. I believe that he would function best in a distraction free environment. Therefore I am recommending that he be allowed to maintain a private room in his dorm." (Doc. 55, Exhibit A.) The second, dated 6 November 2000 and also addressed to ERAU, is from Seth D. Zitwer, D.D. He states that Witbeck "has been under our care with a past medical history significant for asthma, auditory process learning disability. At this point, I believe it to be in his best interests to have a private room. According to his mother . . . Joe is finding it impossible to concentrate, communicate, cope, study, eat, or sleep while sharing a room at your university. His processing problems are exacerbated, according to mom, by constant distraction." (*Id.*)

Because Dr. Naparstek recommended a distraction-free environment in 2000 in the same breath as noting the undated diagnosis, one could perhaps infer from the first letter that in 2000 he believed that Witbeck *still* had CAPD though he had been diagnosed at some unspecified time. (It should, however, be noted that it is also in the same breath that the Doctor notes the diagnosis of Attention Deficit Disorder, which is not a basis for Witbeck's claim.)

The second letter is of less value because the note only describes Witbeck's mother's thoughts regarding Witbeck's health in 2000, and again fails to note when Joseph Witbeck was diagnosed with CAPD; it even specifies that it is part of a "past medical history." The letters would not likely be admissible, but they do suggest that there might be, somewhere in the record, affidavits or other evidence indicating that there are individuals out there whose substantive testimony in support of Witbeck's case may be capable of being reduced to admissible evidence at trial.

8. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348 (1986).

must support its position with affirmative and probative evidence. 477 U.S. at 256–57, 106 S.Ct. 2505. The *Celotex* Court equated a "failure of proof" in the summary judgment context with a failure to actively "make a sufficient showing." 477 U.S. at 323, 106 S.Ct. 2548. The Court instructed parties to "inform" the district court of the bases for their positions; to "designate" the facts that show there is a genuine issue; and to "make the showing" by "pointing out" evidence. *Id.* at 323–25, 106 S.Ct. 2548.

### 2. The Court's Duties

That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial. *Accord L.S. Heath & Son v. A.T. & T. Info. Sys.*, 9 F.3d 561, 567–68 (7th Cir.1993). The goal of summary judgment is to dispose of cases that are meritless, or totally lacking in support. *Crawford–El v. Britton*, 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). For a court not to ensure that a non-moving party's case is indeed meritless might seem to contradict this purpose; for the court to ignore possibly helpful letters like those this Court came upon in this case just because no party has pointed to them might even seem cruel. As already discussed, however, Rule 56 explicitly sets up the shifting burdens intended to apply to a motion for summary judgment and, along with the trilogy, specifically puts the burden on the "adverse party," and not the district court, to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56. The procedure in Rule 56 is mandatory, not advisory. The Rule would amount to empty busy-work for lawyers if, in the end, it were up to the court to ferret out parties' best evidence.[9]

Analogy to Rule 50 is instructive because courts often say that the standard for summary judgment under Rule 56 "mirrors" that for judgment as a matter of law at trial under Rule 50. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120

S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505). Because "the inquiry under each is the same . . . . it therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097. A court, reviewing a Rule 50 motion, of course deals only with the evidence that the parties have presented to the trier of fact, not all the evidence the parties *could* have presented. To grant a motion for judgment under Rule 50, a court need not be sure that the prevailing party is right in an absolute sense; it need only be sure that the prevailing party is right in light of the fact that the parties have been "fully heard on [the relevant] issue . . . ." Fed. R.Civ.P. 50. The "record" for Rule 50 purposes is thus limited to what the parties have presented. If the inquiry is the same under Rule 56, how can it be that the record that the court must review includes matter on which the parties have not been heard?

The Eleventh Circuit is joined by only two other Courts of Appeal in not having explicitly overruled, since the trilogy, the notion of a duty on the part of the district court to excavate evidence from case files. *See Bayway Refining Co. v. Oxygenated Mktg. and Trading A.G.*, 215 F.3d 219, 225 (2d Cir. 2000); *Campbell v. Hewitt, Coleman & Assoc.*, 21 F.3d 52, 57 (4th Cir.1994); *accord* Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, 10 *Federal Practice and Procedure*, §§ 2721, 2739 (3d ed.1998 & Supp.2003 & 2004). The Courts of two circuits have held that district courts have no duty to wade through the whole file, but unless there is a local rule or a court order alerting the parties to *their* duty to be very specific in summary judgment papers (which there is here), the district court may not grant summary judgment simply because the non-moving party failed to support her position with pinpoint cites to the evidence. *See Amnesty America v. West Hartford*, 288 F.3d 467 (2nd Cir.2002); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108 (6th Cir.1989). The

---

**9.** "Judges are not ferrets!" *Nicholas Acoustics & Specialty Co. v. H & M Const. Co.*, 695 F.2d 839, 847 (5th Cir.1983).

Courts of Appeal for the Fifth, Seventh, Eighth, Ninth, Tenth, and District of Columbia Circuits agree that district courts have no special duty, regardless of local rule or court order. *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001); *Adler v. Wal–Mart Stores*, 144 F.3d 664, 670–72 (10th Cir.1998); *L.S. Heath & Son v. A.T. & T. Info. Sys.*, 9 F.3d 561, 567–68 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n. 8 (5th Cir.1992); *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir.1990); *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1033–34 (D.C.Cir. 1988); *accord* 11 James Wm. Moore et al., *Moore's Federal Practice* ¶¶ 56.13 & 56.14 (2003). In *Skotak*, in fact, the Fifth Circuit overruled *Higgenbotham v. Ochsner Found. Hosp*, 607 F.2d 653 (5th Cir.1979), the case from which the Eleventh Circuit drew the *Keiser* rule.

It makes sense for parties alone to shoulder the burden of pointing out the evidence on which they rely at summary judgement. Parties are far more familiar with all of the evidence in the record than a court could hope to be, and, in contrast to courts, are interested in presenting their best case. It would be unfair to the parties, and inefficient, to expect a court to find important evidence from among reams of paper in which it has no interest and is with which it is poorly acquainted. It would be particularly unjust to insist that the moving party make out his own support and give only the nonmovant

the benefit of the Court's services. Moreover, a court should not be made to speculate on which facts and evidence the parties rely and for what purpose; parties are the only ones who can know these things unless and until they inform the district court. *See White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir.1990) (quoting *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989)).[10] This is why even when a court finds potential evidence by accident, it should not consider it in evaluating the summary judgment motion.

There is the risk, under the *Keiser* rule mandating that courts' independently review the case file, that courts might give more attention to each piece of paper in a case comprising one folder than they would to a case in which there are boxes upon boxes of filings.[11] This would be natural given the time constraints often faced by courts. Lawyers too face time constraints, of course. They, however, are advocates who are paid to be as familiar with their large cases as their small ones, and who have the freedom to ensure that they are. Of even graver concern is that a court might, also quite naturally, be at least tempted to devote more attention to finding evidence a party missed when the court is sympathetic to that party or perhaps suspects that poor lawyering is afoot. This is why Rule 56 does not simply mandate that a party move for summary judgment and leave it at that, trusting the courts to advocate for each side.[12]

10. In this case, for example, the Court has no idea whether Dr. Naparstek would be a witness for Witbeck. The Doctor was listed as an expert witness in the Rule 26 Disclosures, but Witbeck did not comply with the disclosure requirements of Rule 26. The Court conceivably might have considered allowing the Doctor to testify as a non-expert witness, but the Court does not wish to speculate on whether Dr. Naparstek would have appeared for Witbeck. This is because there is cause to guess either way: He was listed as a witness, but Witbeck has been either unwilling or unable to convince the doctor to submit an affidavit.

11. In the past, the First Circuit was of the opinion that it is a court's "statutory task" to search for evidence itself regardless of what the parties had designated, but allowed that the task might be more limited if a case were particularly large. *Stepanischen v. Merchants Despatch Transp. Corp.*, 722, F.2d 922, 930–31 (1st Cir.1983). This

Court does not agree that it would be fair for a court to do work on behalf of parties with small cases that it would not do for those with large cases. For the First Circuit's current rule, see *Amnesty America v. West Hartford*, 288 F.3d 467 (1st Cir.2002), and discussion above.

12. For this reason, not only should it not be the rule that courts must search for evidence within the case file on behalf of the parties, but it should not be within courts' discretion to search. In the face of a local rule demanding specificity of parties, a court in the Southern District of Florida wrote that:

Because plaintiff has failed to cite to evidence in the record to show the court precisely where the disputed issues are found, the court is entitled under Local Rule 7.5 to deem admitted all of the facts contained in defendant's statement. Nonetheless, in the interests of deciding the case on the merits, the court has conducted

## III. CONCLUSION

In this case, the evidence the moving party points to supports the conclusion that the non-moving party cannot prove an essential element of his claim at trial, namely that Witbeck has CAPD; the evidence actually supports the conclusion that Witbeck did not have CAPD. In his response to the motion, Witbeck points to no evidence to support the view that he had CAPD and therefore might be entitled to relief pursuant to the Rehabilitation Act. There remain no genuinely disputed issues of material fact and ERAU is entitled to judgment as a matter of law.

Based on the foregoing discussion, the Court rules as follows:

It is **ORDERED** and **ADJUDGED** that:

1. Plaintiff Witbeck's motion to dismiss (Doc. 77, filed 5 December 2003) is **DENIED;**

2. Plaintiff Witbeck's motion to strike the affidavit of Dr. Olander (Doc. 66, filed 6 November 2003) is **DENIED;**

3. Defendant ERAU's motion for final summary judgment (Doc. 54, filed 21 October 2003) is **GRANTED;**

4. All other pending motions are **DENIED AS MOOT;**

5. The issue of costs and fees is **REFERRED TO THE UNITED STATES MAGISTRATE JUDGE;**

6. The Clerk of the Court is directed to **ENTER FINAL JUDGMENT** on behalf of Defendant and to **CLOSE THE CASE.**

---

an exhaustive, independent review of the entire record.
*Mont–Ros v. City of West Miami,* 111 F.Supp.2d 1338, 1345 (S.D.Fla.2000).

If the "interest of deciding the case on the merits" was in conflict with the local rule in this case, it is unclear why it would not always be in conflict.