49 F.3d 679
 L.S.T., INC., individually dba Kokomo, Harvey Adams, Steven
Adams, James Miller, Mark Morris, et al.,
Plaintiffs-Appellees,
v.
Lawrence CROW, individually and in his official capacity as
sheriff of Polk County, Florida, Wayne Cross, individually
and as a Polk County Deputy Sheriff, Grady Judd,
individually and as a Polk County Deputy Sheriff, William
Haynes, individually and as a Polk County Deputy Sheriff,
Rick Dobson, individually and as a Polk County Deputy
Sheriff, et al., Defendants-Appellants.
 No. 93-3361.
 United States Court of Appeals,
Eleventh Circuit.
 April 6, 1995.
 
 Mitchell D. Franks, Donald G. Jacobsen, Edwin A. Scales, Lane, Trohn, Clarke, Bertrand, Vreeland & Jacobsen, P.A., Lakeland, FL, for Lawrence Crow, et al.
 Lawrence D. Shearer, Lakeland, FL, for William Haynes.
 Richard D. Mars, Mars & Masters, Bartow, FL, for appellees.
 Ellen Sly Masters, P.A., Lakeland, FL, for Harvey A. Adams and Steven Adams.
 Appeal from the United States District Court for the Middle District of Florida.
 Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This appeal grows out of an action for money damages filed pursuant to the provisions of 42 U.S.C. Sec. 1983,[1] and also includes various pendent state law causes of action. The defendants seek review of an order entered in the United States District Court for the Middle District of Florida denying their motion for summary judgment founded upon qualified immunity, 834 F.Supp. 1355. For the reasons stated below, we reverse.
 
 I. BACKGROUND
 
 2
 During the early morning hours of April 15, 1990, the Polk County Sheriff's Department received several 911 calls concerning a disturbance at Kokomo's, a nightclub located in Lakeland, Florida. The callers reported that a fight was taking place in the parking lot and that a patron was being held at the club against his will and possibly assaulted by certain persons in the building. Several deputies were dispatched to investigate. Upon arriving at the establishment, they learned that James Crowder, a customer, had been forcibly detained in an office inside Kokomo's and had been subjected to physical violence. Crowder indicated that he wished to press charges against those responsible. After he identified those whom he contended were involved, Steven Adams, Mark Morris, James Miller, Royce Upthegrove, Gary Hysell and Michael Hadden were taken into custody and transported to the Sheriff's substation for further questioning. Charges were eventually preferred against all of the suspects except Hadden, but were later either "no-billed" by the prosecuting attorney or dismissed for failure to prosecute within the time required by Florida's speedy trial provisions, Fla.R.Crim.P. 3.191.[2]
 
 
 3
 On May 6, 1990 at 2:00 a.m., Polk County deputies were again present at Kokomo's, this time to ensure that alcoholic beverages were not being served after hours. As the officers were leaving, Steven Adams, the club's manager, yelled obscenities at them through the sound system and attempted to incite others gathered in the bar. Adams was thereafter placed under arrest. A short time later, Deputy William Haynes arrived on the scene and was directed by a superior officer to clear the parking lot. When Vincent Galvez refused Haynes' third request to leave the area in an effort to restore some semblance of order, Haynes arrested him for resisting an officer in the execution of his lawful duties. Haynes then escorted Galvez to a patrol car. As he turned Galvez toward the vehicle to position him for handcuffing, Galvez fell against the fender and then the trunk of the car and slid to the pavement. He was subsequently transported to the Polk County Jail. Later, the State's Attorney declined to prosecute and the charge against Galvez was dropped.
 
 
 4
 On November 30, 1990, those who were arrested on April 15 and May 6 filed this lawsuit against the deputies directly involved as well as Lawrence Crow, the Sheriff of Polk County. In addition to those arrested, Harvey Adams, the alleged owner and L.S.T., Inc., the purported corporate operator of Kokomo's, were named as plaintiffs. Count one of the thirteen-count complaint alleged that the defendants and other unidentified Polk County deputies had, on unspecified dates, engaged in a course of intimidating conduct at the nightclub which included checking customers' identification, searching employees, patrons and the premises without probable cause, arresting employees and visitors without justification, issuing traffic tickets, blocking the entrances and exits of the establishment and creating public disturbances, all of which eventually caused the club to go out of business. According to the complaint these actions violated the plaintiffs' right to be free from illegal searches and seizures and deprived them of profits from the operation of the bar and their right to assemble. Count two asserted that the foregoing conduct was the result of a policy, custom or practice promulgated by Sheriff Crow. Count three alleged a conspiracy between Sheriff Crow and the deputy defendants to deprive the plaintiffs of their civil rights. Counts four through eleven raised state law claims for false imprisonment, malicious prosecution and battery arising out of the events that occurred on April 15 and May 6. In addition, counts twelve and thirteen concerned charges made only by L.S.T., Inc., Harvey Adams and Steven Adams for the state law causes of action of tortious interference with business and defamation.
 
 
 5
 After the suit was filed, the court issued an "Order Scheduling Preliminary Pretrial Conference and Directing Answers to Standard Interrogatories." These questions required the plaintiffs to state with particularity the conduct committed by the defendants for which relief was sought. For the most part, however, the plaintiffs' responses[3] merely reiterated the same general allegations set forth in count one of the complaint. The only specific conduct attributed to the named defendants was that surrounding the arrests of the various plaintiffs on April 15 and May 6. Later, the district court denied the defendants' motion for a more definite statement reasoning that, although counts one through three contained only imprecise charges, counts four through eleven of the complaint were sufficient to notify the defendants of the dates and times of their alleged wrongdoing. Even though the court denied the motion for a more definite statement, it ordered the plaintiffs to amend count three of the complaint alleging conspiracy because it failed to meet the pleading requirements for stating a claim imposed by 42 U.S.C. Sec. 1985.[4]
 
 
 6
 On June 30, 1993, the defendants filed motions to dismiss or in the alternative for summary judgment asserting numerous grounds for dismissal, including the allegation that they were immune from an assessment of Sec. 1983 damages by virtue of qualified immunity.[5] In an order filed October 5, 1993, the district court granted partial summary judgment to the defendants on count two of the complaint because the plaintiffs failed to raise a genuine issue of fact with respect to the existence of an illegal policy, custom or practice. It dismissed count three because the plaintiffs failed to amend it as previously directed. In addition, the court dismissed for lack of standing such Sec. 1983 claims that may have been asserted on behalf of L.S.T., Inc.[6] The court determined further that the plaintiffs failed to state a cognizable Sec. 1983 claim in count one relating to the right of assembly. For reasons not clear to us, the court construed the defendants' qualified immunity defense as directed solely to the state law claims raised in counts four through eleven of the complaint[7] and denied it because such a defense has relevance only to the alleged denial of a federal right. This appeal concerns only the district court's implicit denial of the defense as it applies to count one of the complaint.
 
 II. DISCUSSION
 
 7
 Although a final order has not been entered in this case, this court has jurisdiction to review the district court's denial of the motion for summary judgment grounded on qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411, 427 (1985).[8] Qualified or "good faith" immunity shields government officials from liability for civil damages arising out of the performance of their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982). The standard for reviewing the propriety of the defense in the context of a motion for summary judgment mirrors that applicable to a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a). Bennett v. Parker, 898 F.2d 1530, 1532 (11th Cir.1990), cert. denied, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265, 273-74 (1986). If the facts taken in the light most favorable to the plaintiff do not establish a violation of a clearly established constitutional right, the public official is entitled to summary judgment. Bennett, 898 F.2d at 1532. An appellate court's consideration of a district court's denial of a motion for summary judgment based on qualified immunity is de novo. Elder v. Holloway, 510 U.S. ----, ----, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344, 351 (1994); Bennett, 898 F.2d at 1532; Waldrop v. Evans, 871 F.2d 1030, 1032 n. 1 (11th Cir.1989).
 
 
 8
 Our first task is to determine what federal causes of action were advanced by the plaintiffs in count one of the complaint. As noted earlier, this count contained broad and general accusations of a campaign of harassment and intimidation waged by named and unnamed defendants against named and unnamed plaintiffs, which allegedly included unreasonable searches and seizures and which purportedly deprived the plaintiffs of their right to assemble and their profits from the bar. When directed by the court to particularize these allegations, the plaintiffs responded with the same vague charges. It is well-established that such conclusory allegations are insufficient to state a Sec. 1983 claim for relief. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir.1984).
 
 
 9
 Even under the so-called notice rules of pleading, the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for "[i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery."
 
 
 10
 Id. at 556 (citations omitted).
 
 
 11
 The only claimed wrongful conduct specifically identified by the plaintiffs in their responses to interrogatories and to the defendants' motion to dismiss or in the alternative for summary judgment concerned the arrests on April 15 and May 6. As the district court found, these contentions were those definite enough to enable the defendants to form a responsive pleading. The sole federal cause of action we glean from count one of the complaint, therefore, as narrowed by the plaintiffs' subsequent pleadings, is one for arrest without probable cause based upon the events of April 15 and May 6.
 
 
 12
 We turn next to the question of whether the defendants were entitled to summary judgment on their qualified immunity defense. The party seeking summary judgment bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274 (quoting Fed.R.Civ.P. 56(c)). When a motion for summary judgment is properly supported, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must, through affidavits or as otherwise provided in Fed.R.Civ.P. 56, "designate 'specific facts showing that there is a genuine issue for trial.' " Id. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274 (quoting Fed.R.Civ.P. 56(e)); Bennett, 898 F.2d at 1532 n. 1. This means, in the context of a motion based on qualified immunity, that the plaintiff must show "there is a genuine issue of material fact regarding the defendant's conduct as being violative of the clearly established law governing the case." Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir.1991).
 
 
 13
 Here, the defendants supported the motion for summary judgment with affidavits and arrest reports describing the occurrences on April 15 and May 6. The plaintiffs, in their response, offered nothing in rebuttal. Instead, they asked the district court for an opportunity to present opposing affidavits in the event the court decided to hold a hearing on the motion. At oral argument, counsel for the plaintiffs stated that this tactic stemmed from a belief that the motion and supporting documents were insufficient to show entitlement to judgment. Therefore, the burden of demonstrating a triable issue of fact never shifted to them.[9] We disagree.
 
 
 14
 The unrebutted reports and affidavits of the defendant officers submitted in support of the motion for summary judgment leave no doubt that the arrests were supported by probable cause. These documents disclose that the actions taken by Polk County law enforcement personnel on April 15 were based upon the victim's complaint and his identification, during a "showup" of customers and employees of the bar, of the persons he accused of assaulting and detaining him. The officers also relied on statements taken from a number of other patrons of the club who were eyewitnesses to these events. Likewise, arrest reports and affidavits contained in the record concerning the melee on May 6, which also stand unchallenged by the plaintiffs, support the charges lodged against Steven Adams for breaching the peace, disorderly conduct and resisting an officer. They also reveal that the plaintiff, Vincent Galvez, refused to comply with defendant Haynes' lawful order to leave the parking lot.[10] Galvez's arrest for resisting an officer was therefore warranted.
 
 
 15
 The existence of probable cause is an absolute bar to this Sec. 1983 action. Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir.1990).[11] The fact that all charges against the plaintiffs were eventually dismissed for one reason or another is "of no consequence" to this determination. Id. at 1507. Faced with the disorder caused by the plaintiffs under these trying circumstances, we cannot say the defendants' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known.
 
 
 16
 Having found that the defendants are entitled to qualified immunity, the only causes of action remaining in this case are those involving state law. Because diversity of citizenship does not exist and all the federal claims to which these state charges were jurisdictionally attached have been eliminated, the district court should consider on remand whether the continued exercise of its supplemental jurisdiction over counts four through thirteen of the complaint is appropriate. See 28 U.S.C. Sec. 1367(c)(3) (district court may decline to exercise supplemental jurisdiction where all claims over which it had original jurisdiction have been dismissed); McCoy v. Webster, 47 F.3d 404, 408 & n. 4 (11th Cir.1995). The district court is directed to take appropriate action on remand.
 
 III. CONCLUSION
 
 17
 In accordance with the foregoing analysis, we REVERSE the district court's denial of the defendants' motion for summary judgment based on qualified immunity and REMAND the case for further proceedings consistent with this opinion.
 
 
 
 [1]
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia
 42 U.S.C. Sec. 1983.
 
 
 [2]
 According to arrest reports contained in the record, Miller and Hysell were charged with battery, Upthegrove with assault and battery. Adams was arrested for false imprisonment. The record does not reveal the nature of the charge or charges lodged against Morris
 
 
 [3]
 Interrogatories were propounded by the court twice, on March 25, 1991 and on August 14, 1991. The plaintiffs filed identical answers on April 19, 1991 and August 21, 1991
 
 
 [4]
 The plaintiffs did not specifically refer to Sec. 1985 in the complaint. They alleged in a memorandum filed in opposition to a motion to dismiss for failure to state a claim that "the Third Count claims a conspiracy as prohibited by 42 U.S.C. Sec. 1985." (R2-21-5). They did not identify which of the three parts of Sec. 1985 constituted the basis of the asserted conspiracy. The first clause proscribes plots to interfere with the performance of official duties by a federal officer. See 42 U.S.C. Sec. 1985(1). The second addresses conspiracies to obstruct justice through the intimidation of parties, witnesses or jurors in judicial proceedings. See 42 U.S.C. Sec. 1985(2). We presume the plaintiffs must have intended to invoke part three, which prohibits agreements to deprive persons of their civil rights. See 42 U.S.C. Sec. 1985(3). To state a claim under that section, a plaintiff must allege "that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action[.]' " Bray v. Alexandria Women's Health Clinic, 506 U.S. ----, ----, 113 S.Ct. 753, 758, 122 L.Ed.2d 34, 45 (1993) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971))
 
 
 [5]
 Throughout this case defendant William Haynes has proceeded separately from the other defendants. Even so, this appeal does not require us to analyze his particular contentions apart from those made by the others. Consequently, we refer to the defendants collectively
 
 
 [6]
 A corporation is not a "citizen" entitled to the privileges and immunities secured by federal law for purposes of Sec. 1983. See Hague v. Committee for Indus. Org., 307 U.S. 496, 514, 59 S.Ct. 954, 963, 83 L.Ed. 1423, 1436 (1939) ("Natural persons, and they alone, are entitled to the privileges an immunities which Sec. 1 of the Fourteenth Amendment secures for 'citizens of the United States.' ")
 
 
 [7]
 Qualified immunity is an affirmative defense which must be pleaded by the defendant. Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir.1988). Neither the complaint nor the defendants' motion for summary judgment in which the defense was asserted are models of clarity. The court's confusion undoubtedly stemmed in part from the "scattergun" nature of the allegations contained in count one of the complaint and the defendants' failure to tailor their defenses to the particular causes of action alleged therein. Instead, the defendants offered up a multitude of reasons for dismissal of the complaint. As we discuss in more detail below, we construe the portions of count one not otherwise dismissed by the district court as alleging only one cognizable federal cause of action, that is, for arrest without probable cause. We also hold that the defendants sufficiently pleaded qualified immunity with respect to count one
 
 
 [8]
 The insufficiency of counts two and three, which were dismissed for reasons other than qualified immunity, is not before us under the collateral order doctrine which permits us to consider the immunity issue. See Schmelz v. Monroe County, 954 F.2d 1540, 1542-43 (11th Cir.1992). Nor does this case present us with an opportunity to exercise pendent appellate jurisdiction to pass on the propriety of the district court's disposition with respect to these counts. See Swint v. Chambers County Comm'n, --- U.S. ----, ----, 115 S.Ct. 1203, 1211-12, 131 L.Ed.2d 60 (1995) (holding that an appellate court may not exercise pendent appellate jurisdiction to review a nonfinal district court order where the merits of the nonfinal order are not inextricably intertwined with the properly appealed collateral order, or where review of the former is not necessary to ensure meaningful review of the latter). The district court's dismissal of these two federal counts can only be appealed after a final order is entered on remand
 
 
 [9]
 The plaintiffs declined to oppose the motion at the time it was filed at their peril. Nothing in Rule 56 requires a district court to conduct a hearing on a motion for summary judgment. On the other hand, if the nonmoving party does not respond by affidavit or otherwise to a properly supported motion, "summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). Moreover, this was not a situation in which the district court was required to give the plaintiffs an additional opportunity to respond because it intended to construe the defendants' motion as one for summary judgment, as must be done when a court converts a motion to dismiss for failure to state a claim to a motion for summary judgment. See Fed.R.Civ.P. 12(b). Counsel for the plaintiffs stated at oral argument that they were "well-aware" the defendants' motion put the case into a summary judgment posture
 
 
 [10]
 According to the record, Adams walked up to the disc jockey's booth in the bar and, referring to the officers on the scene stated: "You don't have to do a fucking thing these people tell you to do. As long as there's no alcohol out on the table.... So just fuck them." (R2-87, Exhibit Q). In response, the customers in the bar, who numbered more than 200, began yelling, cheering and approaching the deputies, causing them much concern for their safety. Adams resisted arrest by refusing to place his hands behind his back. After this was accomplished by force, the deputies escorted Adams outside and the jeering crowd followed. Adams continued to shout until he was placed in a patrol car. (Id.). Haynes was called to help quell the disturbance in the parking lot
 
 
 [11]
 We note that actual probable cause is not necessary to defeat a Sec. 1983 action for unreasonable seizure. "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991) (quoting Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987))