Mark HART, Plaintiff,

v.

LINDGREN–PITMAN,
INC., Defendant.

Case No. 06–60285–CIV.

United States District Court,
S.D. Florida.

Dec. 3, 2007.

Richard Bernard Celler, Kelly Allyssha Amritt, Morgan & Morgan, P.A., Davie, FL, for Plaintiff.

Sergio R. Casiano, Jr., Miller, Kagan, Rodriguez & Silver, P.A., Coral Gables, FL, for Defendant.

## ORDER

WILLIAM J. ZLOCH, District Judge.

THIS MATTER is before the Court upon Plaintiff Mark Hart's Motion For Summary Judgment (DE 24) and Defen-

dant Lindgren–Pitman, Inc.'s First Motion For Summary Judgment (DE 28). The Court has carefully reviewed said Motions and the entire court file and is otherwise fully advised in the premises.

Plaintiff initiated the above-styled cause with the filing of his Complaint (DE 1), in which he alleges that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (2006) (hereinafter "FLSA"), by failing to pay him certain overtime wages. Plaintiff has filed his Motion For Summary Judgment (DE 24) on the limited issue that he falls within the provisions of the FLSA and is not exempt from coverage thereunder. Defendant cross-motions on the same issue, arguing that Plaintiff is employed in a bona fide executive capacity and therefore is not owed overtime payments pursuant to the FLSA's overtime provisions. DE 28. Defendant also argues that Plaintiff's pay structure was such that his employment for over forty hours in a given workweek without overtime pay did not violate the FLSA. DE 28.

## I. *Background*

Defendant manufactures commercial fishing products, including monofilament (commercial grade fishing line). Plaintiff Mark Hart was employed by Defendant from June of 1996 until December of 2005 in the monofilament department.[1]

The monofilament department had two large machines which produced varying sizes and colors of monofilament fishing line. In order to reduce waste unavoidably created when the machines were started and stopped, Defendant kept the machines operating as much as possible. The process ran twenty-four hours per day, five days per week, and sometimes seven days per week. When there were enough workers, there were three eight (8) hour shifts in the monofilament department. At times when there was a shortage of employees, there were only two twelve (12) hour shifts. The Parties dispute whether Plaintiff worked on the first or second shift.

Due to the nature of the job, only one operator was needed to perform the work during a shift. Thus, Plaintiff would run the machines alone during his shift, with overlap with another employee at the beginning and end of each shift. When a new employee was hired, or a prospective employee was being interviewed, that employee would work alongside Plaintiff during Plaintiff's shift to learn how to use the monofilament machines. During those times when the machines were shut down for maintenance or during slow production periods, Plaintiff and the others in his department would perform the maintenance on the machines and otherwise maintain the upkeep of the department. If Plaintiff needed help with maintenance, repairs, or moving materials during his shift, he could obtain help from employees in other departments. Due to Plaintiff's skill with the machines, most of the changes in the size or color of monofilament produced were made during Plaintiff's shift.

In 2000, Plaintiff and Defendant renegotiated the terms of Plaintiff's employment. The Parties reduced their understanding to a two-page written Employment Agreement signed by Plaintiff and representatives of Defendant. DE 28, Ex. A. In said Agreement, the Parties listed Plaintiff's duties, rate of pay, benefits, and severance agreement. With regard to his duties, the Agreement listed the following: acting as

---

1. The following facts, unless otherwise noted, are undisputed.

monofilament plant operator and coordinator, participating in operator hiring, operator training, inventory reporting and controlling, scheduling and executing plant maintenance, performing research and development of materials, and being on-call for any process-related emergencies. With regard to his pay, the Agreement stated Plaintiff's compensation to be $50,064.15 per year, which equals $962.77 per week. The Agreement also noted that Plaintiff's job duties were expected to take forty-five to fifty-five hours per week to perform, but could require sixty during another worker's absence.

## II. *Standard of Review*

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir. 1990). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Indeed,

> the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when

that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

*Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987).

■ Nevertheless, where the moving party properly supports the motion for summary judgment, "the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must, through affidavits or as otherwise provided in Rule 56, designate specific facts showing that there is a genuine issue for trial." *L.S.T., Inc. v. Crow,* 49 F.3d 679, 684 (11th Cir. 1995) (internal quotations and citations omitted).

## III. *Bona Fide Executive Exemption*

■ The instant Motions (DE Nos. 24 & 28) are cross-motions for summary judgment. In Defendant's Answer And Affirmative Defenses (DE 6), Defendant alleged that Plaintiff was exempt from

coverage of the FLSA as a bona fide executive. 29 U.S.C. § 213(a)(1) (2006).[2] In his Motion (DE 24) Plaintiff argues that he does not fall into the bona fide executive exception because he did not perform the duties enumerated in § 213(a)(1). DE 24. In Defendant's Motion For Summary Judgment (DE 28), it argues that Plaintiff performed the duties of an exempt bona fide executive. Additionally, Defendant argues that Plaintiff is not owed overtime pay based on his payment structure, as contemplated by 29 U.S.C. § 207(f). DE 28.

The FLSA prohibits any employer from employing his employees in a workweek for more than forty (40) hours, unless said employees receive for the hours above forty in the workweek a rate of pay in excess of one-and-one-half times their regular rate of pay. 29 U.S.C. § 207(a) (2006). However, the FLSA exempts individuals employed as bona fide executives from the requirement of overtime pay. *Id.* § 213(a)(1). An employee is considered to be employed in a bona fide executive capacity if 1) he is compensated on a salary basis of at least $455.00 per week; 2) he has the primary duty of managing the enterprise or a department thereof; 3) he customarily and regularly directs the work of two or more other employees; and 4) his suggestions as to hiring and firing other employees are given particular weight. 29 C.F.R. § 541.100(a) (2007). The Court notes that these requirements are conjunctive. *Id.*

The Court will first address the third element necessary to be considered employed in a bona fide executive capacity. To be considered a bona fide executive under 29 C.F.R. § 541.100(a), such an employee must customarily and regularly direct the work of two or more employees other than himself. 29 C.F.R. § 541.100(a) (2007). The Labor Department regulations clearly state that such supervised individuals must be full-time employees. 29 C.F.R. § 541.104(a) (2007).

The record is clear that Plaintiff did not customarily and regularly direct the work of two or more other individuals. Plaintiff testified that only one person worked during each of the three shifts in the monofilament department. DE 23, Ex. B, pp. 28–29 (Deposition of Mark Hart) (hereinafter "Hart Depo."). Peter Lindgren, a principal of Defendant (hereinafter "Lindgren"), testified on behalf of Defendant. Lindgren likewise testified that Plaintiff worked alone in his department during his shifts. DE 23, Ex. A, p. 39 (Deposition of Peter Lindgren)(hereinafter "Lindgren Depo."). Both Plaintiff and Lindgren testified that part of Plaintiff's job was to train new employees. Hart Depo. p. 51; Lindgren Depo. pp. 32–33, 53. The duties involved with training, however, never included training more than one individual at a time. Lindgren Depo. pp. 32–33, 53–54. In addition, Plaintiff's training of newly hired individuals for the four-member monofilament department does not constitute customary and regular direction of the work of another. 29 C.F.R. § 541.701 (2007) ("The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant.").

---

**2.** Section 213(a)(1) exempts "any employee employed in a bona fide executive, administrative, or professional capacity ..., or in the capacity of an outside salesman" from coverage of the minimum wage and maximum hour requirements. The Parties do not argue over whether Plaintiff was employed in an administrative, professional, or outside salesman capacity. Their arguments are limited to whether Plaintiff was employed as a bona fide executive.

Therefore, the Court finds as a matter of law that Plaintiff did not customarily and regularly direct the work of two or more employees. 29 C.F.R. § 541.100(a). Accordingly, Plaintiff is entitled to summary judgment on his Motion (DE 24) on this ground. Likewise, Defendant has failed to show that it is entitled to judgment as a matter of law on this ground, and therefore its Motion (DE 28) will be denied. Fed.R.Civ.P. 56(c). Because resolution of this issue resolves Plaintiff's Motion (DE 24) in its entirety and Defendant's Motion (DE 28) in part, the Court has no need to address the remaining requirements of 29 C.F.R. § 541.100(a).

### IV. *Plaintiff's Pay Structure*

Defendant argues in its Motion (DE 28) that, in the event Plaintiff is found to be non-exempt under the FLSA, and thus covered by the overtime pay requirements, Plaintiff was nevertheless properly compensated because he was paid pursuant to an agreement contemplated by Section 7(f) of the FLSA. 29 U.S.C. § 207(f) (2006). That Section states the following:

> No employer shall be deemed to have violated subsection (a) of this section [requiring overtime pay] by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under subsection (a) of this section if such employee is employed pursuant to a bona fide individual contract, ... if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in subsection (a) or (b) of section 206 ... and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a

weekly guaranty of pay for not more than sixty hours based on the rates so specified.

*Id.* Succinctly stated, if Plaintiff's duties necessitated irregular hours, then a contract calling for uniform salary-like payments to be made regardless of the number of hours worked satisfies the hours, then a contract calling for uniform salary-like payments to be made regardless of the number of hours worked satisfies the overtime requirements of § 203(a) of the FLSA.

Plaintiff was employed as a machine operator in the monofilament department of Defendant. That department was operated by regular shifts of either eight hours or twelve hours. Lindgren Depo. pp. 46–47, 58. While there, Plaintiff regularly worked on such shifts. *Id.* pp. 31–32. There is no evidence in the record to establish that the work of Plaintiff's department was anything but regular shift work. The Court notes that the Employment Agreement (DE 28, Ex. A) contemplated that Plaintiff would be on call for any emergencies, but the record does not reflect extra-shift hours being worked. Likewise, it does not reflect that Plaintiff ever worked less than a normal shift other than when taking time off. In fact, Lindgren testified that he required Plaintiff to punch a time clock because he wanted to make sure Plaintiff was showing up for his shifts. Lindgren Depo. p. 69. Thus, the record reflects that Plaintiff worked regular hours, and Defendant's Motion (DE 28) will thereby be denied.

In the alternative, even assuming Plaintiff did work irregular hours, Defendant has not established that Plaintiff's work necessitated such irregularity. Lindgren testified that Plaintiff was the "lead guy" for monofilament production. Lindgren

Depo. p. 42. He also testified that the process of monofilament production ran automatically, leaving Plaintiff time to tend to other duties such as taking inventory during his shift. *Id.* However, even with Plaintiff's inventory and other duties, Lindgren stated that, if everything in the monofilament department was running smoothly. Plaintiff "may sit down and read the paper." *Id.* p. 43. Plaintiff's job was "kind of a baby-sitting job." *Id.* Thus, it does not appear clearly from the record that Plaintiff's work necessitated irregular hours.

Plaintiff's co-workers also did not force his job into irregular hours. It is uncontested that Plaintiff was the senior operator in his department. Thus, questions from less experienced workers would properly be brought to his attention. Plaintiff did have a cellular phone, and the other operators in his department knew the number. Hart Depo. p. 50. However, the phone was not provided by Defendant. *Id.* The record is unclear as to whether Plaintiff was ever called during the other shifts to assist in the operation of the monofilament machines. However, assuming Plaintiff was actually called, the evidence establishes that this could not have been a regular occurrence. *See* Lindgren Depo. pp. 36–37; Hart Depo. pp. 49–51. These instances, if any, are not sufficient to qualify Plaintiff's duties for the Section 7(f) exemption. *See* 29 C.F.R. § 778.405 (2007) ("[N]or would an employee who only rarely or in emergencies is called upon to work outside a regular schedule qualify for this exemption.").

Therefore, taking the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's duties did not "necessitate irregular hours of work." 29 U.S.C. § 207(f). Thus, the agreement between Plaintiff and Defendant did not fall under § 7(f) of the FLSA, because Plaintiff's employment did not necessitate him working more than forty hours in a workweek. Therefore, because Defendant has failed to establish that no genuine issue of material fact remains on the issue of Plaintiff's contract and that it is entitled to judgment as a matter of law, Defendant's Motion (DE 28) will be denied.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. That Plaintiff Mark Hart's Motion For Summary Judgment (DE 24) be and the same is hereby **GRANTED;** and

2. That Defendant Lindgren–Pitman, Inc.'s First Motion For Summary Judgment (DE 28) be and the same is hereby **DENIED.**