[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11736
Non-Argument Calendar

_____

D. C. Docket No. 2:10-cv-00526-JES-DNF

KENNETH C. HENDRICKS,
WILLIAM C. KERRIGAN,
ADRIAN OLIVARES,

Plaintiffs-Appellants,

versus

SHERIFF, COLLIER COUNTY, FLORIDA,
DONALD C. HUNTER,
individually, and as the former Sheriff of Collier County,
THOMAS STORRAR, JR.,
individually, and as the former undersheriff of Collier County,
RALPH SCALA,
in his official capacity as a Deputy with the Collier County Sheriff,
ANDREW DREW,
in his official capacity as a Deputy with the Collier County Sheriff, et al.,

Defendants-Appellees,

SCOTT SALLEY, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 15, 2012)

Before DUBINA, Chief Judge, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Appellants Kenneth C. Hendricks, William C. Kerrigan, and Adrian

Olivares (collectively "Appellants") challenge the district court's ruling on two of

three separate motions for summary judgment in favor of the six Appellees: former

Sheriff Donald C. Hunter, former Undersheriff Thomas Storrar Jr., and Deputy

Sheriffs Ralph Scala, Andrew Drew, John Hurley, and Jose Lopez.  For the

reasons that follow, we affirm the district court's grant of summary judgment in

favor of the Appellees.

## I.

*Facts*

Late Saturday night, May 3, 2008, Appellants threw a party at Adrian

Olivares's home for his birthday.  Appellants allege that after 2:00 a.m. the next

morning, four young men who are no longer parties to this action, Tyler Mullins,

2

Jarrad Horne, Jeff Storrar,[1] and Brian Calyore, arrived at the party.  Olivares and Hendricks asked them to leave because they were drunk and loud, so they left.  Soon after leaving, Mullins returned alone, explaining that there was a fight during which Horne broke his hand and another person, Cody James Martin, pulled a knife.

According to the four Deputy Sheriff-Appellees, Cody James Martin and Nicholas Chesley Alteen, (hereinafter "the victims") called the Sheriff's Department to report that four white males in a black Suburban attacked them.  The victims recalled part of the Suburban's Florida license plate, "X44."  The victims reported that the four attackers had a weapon and that they tried to rob them.  Deputies Scala, Drew, and Hurley searched for the Suburban and found it in Olivares's driveway, where Mullins parked it upon returning.  The Suburban's tag number, X44-TN9, corresponded with the partial plate number provided by the victims.  The Suburban was registered to Mullins, who stood outside Olivares's house near his car talking with Appellants when the deputies arrived.  Deputy Lopez also arrived at Olivares's house at some point after the other deputies spotted the Suburban.

---

[1] Jeff Storrar is the son of Appellee former Undersheriff Thomas Storrar Jr.  Jeff is also the godson of Appellee former Sheriff Donald C. Hunter.

3

Appellee Deputy Hurley then brought the victims to Olivares's house where he conducted a "show-up," spotlighting Mullins and Appellants while asking the victims if Mullins and Appellants were the ones who confronted them. Both victims positively identified Mullins and Appellants. Appellants allege that Mullins immediately admitted his involvement and alerted the deputies that three others—Jarrad Horne, Jeff Storrar, and Brian Calyore—were actually the other perpetrators, and that Appellants were not. Appellants further allege that the deputies refused to listen to Mullins's story or Appellants' alibi, but instead arrested Appellants along with Mullins. Appellants were jailed from early Sunday morning until they were released on bond at various times late Monday night and early Tuesday morning.

At some point after Appellants were detained, Appellee former Undersheriff Thomas Storrar Jr. learned that his son, Jeff, was in a confrontation involving the Sheriff's Department. Jeff Storrar claims that he began to tell his father about his involvement in the incident *and* that others were mistakenly identified and wrongly accused. However, Jeff claims that his father stopped him short and advised him to speak to an attorney. Thomas Storrar Jr. claims that Jeff *only* told him that he was involved in an incident involving the Sheriff's Department, and that he advised his son to talk to an attorney. Thomas Storrar Jr. told former

4

Sheriff Hunter that his son was involved in an incident, but did not relay any information to Hunter about mistaken arrests. Hunter advised Storrar to dissociate himself from any investigation involving Jeff.

Appellants were charged with "felony battery" and "robbery - armed with other weapon," but were never indicted or prosecuted. Soon after the arrests, the Sheriff's Department published its bi-weekly bulletin in the community, which included Appellants' names and pictures, stating that Appellants were involved in a robbery. The Sheriff's Department's investigation closed in June 2008, but in August, after Hendricks's attorney filed a complaint, the Florida Department of Law Enforcement asked the Sheriff's Department to investigate further. In the reopened investigation, Jeff Storrar, who was not previously interviewed, told a deputy that Appellants were not involved in the May 4, 2008 incident. Lacking sufficient evidence to prosecute, the state dropped the charges against Hendricks and Kerrigan in September 2008 and against Olivares in October 2008.

*Procedural History*

In August 2010, Appellants filed a complaint in Florida state court against Appellees and several other defendants, alleging various civil rights violations under 42 U.S.C. § 1983 as well as state law torts. The case was removed to federal court where, over the span of a year, the complaint was amended three

5

times and several defendants and claims were dismissed. The remaining

defendants filed three motions for summary judgment: one by Sheriff Kevin

Rambosk, who is not an Appellee, one by Appellees former Sheriff Hunter and

former Undersheriff Storrar, and one by Appellees Deputies Scala, Drew, Hurley,

and Lopez. In their responses to the motions, Appellants dropped several of their

claims. In a single Memorandum and Order, the district court granted summary

judgment for the movants on the remaining claims, but it denied summary

judgment to Lopez on Count XI, a claim for falsifying facts under § 1983. Upon

Appellants' motion, the court entered final judgment under Federal Rule of Civil

Procedure 54(b) so that Appellants could seek our review of summary judgment

before prosecuting the remaining claim against Lopez.[2] Appellants then filed this

timely appeal.

## II.

"We review *de novo* a district court's disposition of a summary judgment

motion . . . , applying the same legal standards as the district court." *Durruthy v.*

*Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). A movant is entitled to summary

---

[2] "When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b).

6

judgment "if [he] shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  We consider the facts and reasonable inferences in the light most favorable to the non-moving party.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

## III.

Appellants challenge the district court's grant of summary judgment in favor of Deputies Scala, Drew, Hurley, and Lopez on Counts IV and VI (false arrest under § 1983 and false arrest under state law), and in favor of former Sheriff Hunter and former Undersheriff Storrar on Counts II and XII (false imprisonment under § 1983 and conspiracy under § 1983).  We first analyze the Appellants' false arrest claims against the Deputy Sheriffs, and then the false imprisonment and conspiracy claims against the former Sheriff and Undersheriff.

### A.  Counts IV and VI (false arrest under § 1983 and state law)

Appellants allege that the four Deputy Sheriffs falsely arrested them in violation of § 1983 and Florida law.  Appellants have the right to be free from unreasonable searches and seizures.  *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).  If, however, the deputies had probable cause to arrest Appellants, then the seizures were reasonable, and Appellants have no claim for false arrest under § 1983, *see id.*, or Florida state law, *see Lewis v. Morgan*, 79

7

So. 3d 926, 928–29 (Fla. Dist. Ct. App. 2012). "Probable cause is defined as facts and circumstances sufficient to warrant a prudent man in believing that [a] suspect . . . committed or was committing an offense." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S. Ct. 854, 862 (1975)) (internal quotation marks omitted). An officer is generally entitled to rely on, among other things, a victim's criminal complaint and identification in a "show-up" as support for probable cause. *L.S.T., Inc. v. Crow*, 49 F.3d 679, 684–85 (11th Cir. 1995) (per curiam).

Even if the deputies lacked probable cause, they are still entitled to qualified immunity if they had arguable probable cause to arrest. *See Durruthy*, 351 F.3d at 1089. "Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Id*. (internal quotation marks omitted). Officers have arguable probable cause even when every element of a crime cannot be proven. *Grider*, 618 F.3d at 1257.

Appellants argue that at the time of their arrest, there was neither probable cause nor arguable probable cause to arrest. First, Appellants contend that at the time of the arrests, the deputies only knew that the two victims positively identified Appellants and Mullins in a show-up. They assert that this show-up

8

identification alone was insufficient to establish actual or arguable probable cause because none of the deputies interviewed the victims about the reported crimes prior to making arrests, and thus, none of the deputies were certain about what actually occurred at the time of the arrests.  We agree with the district court that it was reasonable for the deputy sheriffs to rely on the victims' specific description of the Suburban, the general description of the four men involved in the incident, the location of the Suburban at Olivares's house, and most importantly, the victims' positive identification of Appellants at the show-up.  *See Crow*, 49 F.3d at 684–85.  Thus, we conclude that the deputies had probable cause, or at least arguable probable cause.

Appellants next contend that the deputies had no evidence substantiating the two crimes charged: "robbery - armed with other weapon," and "felony battery." *See* FLA. STAT. §§ 812.13, 784.041(1).  Appellants point out that Mullins and the three others actually with him did not take any money or property from the victims, and there was no evidence of the requisite weapon used during the alleged robbery.  Likewise, Appellants argue that there was no evidence of a serious harm done to either victim that would rise to the level of felony battery.  However, Appellants' arguments make no difference to a probable cause analysis.  An officer's "subjective reliance on an offense for which no probable cause exists"

9

does not make an arrest faulty where there is actually probable cause to support some other offense. *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) (quoting *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973)). In this instance, the positive show-up identification and the victims' call to the Sheriff's Department would have still given the deputies actual or arguable probable cause to arrest for less serious offenses.

Lastly, Appellants assert that the deputies' investigation at the scene of the arrest was constitutionally deficient insofar as the deputies ignored available evidence. Appellants argue that the officers failed to interview others who had been present at Olivares's home, including Olivares's brother who was still inside, who could have verified that Appellants never left the party with Mullins. Mullins allegedly volunteered the names of the three other people who were actually with him when the victims were confronted, yet the officers ignored Mullins and did not ask for more information. Citing *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004), Appellants urge us to hold that because there is doubt as to whether the deputies conducted a thorough investigation at the time of the arrest, summary judgment was inappropriate on the false arrest claims. In *Kingsland*, we reversed the district court's grant of summary judgment in favor of law enforcement officers who allegedly manufactured evidence to support probable

10

cause, failed to conduct a reasonable investigation, and ignored certain facts within their knowledge. *Id.* at 1228–31. But *Kingsland* is distinguishable from the instant case. In *Kingsland*, the actual or arguable probable cause to arrest was based solely upon the defendant officers' testimony against the arrestee-plaintiff. In this case, however, the officers had probable cause to arrest that was not fraudulently obtained and that arose independently of their own observations — *i.e.*, the victims' positive identification of Appellants as their attackers.

For all these reasons, we conclude that Appellants' arguments on the false arrest claims are without merit, and we affirm the district court's grant of summary judgment in favor of Appellees Scala, Drew, Hurley, and Lopez.

**B.  Counts II and XII (false imprisonment and conspiracy under § 1983)**

*False Imprisonment*

Appellants allege that Appellees former Sheriff Hunter and former Undersheriff Storrar falsely imprisoned them and conspired with one another to deprive Appellants of their civil rights. To substantiate their false imprisonment claim, Appellants must show that they were unlawfully detained and deprived of their liberty, against their will, under circumstances that were unreasonable or unwarranted. *See Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. Dist. Ct. App.

11

2010). Furthermore, a false imprisonment claim brought under § 1983 requires proof that Appellees were deliberately indifferent to the deprivation of Appellants' due process rights. *See Cannon v. Macon Cnty.*, 1 F.3d 1558, 1563 (11th Cir. 1993). Appellants must show that Hunter and Storrar knew or should have known, during Appellants' detention, that Appellants were wrongfully detained, and that Hunter and Storrar were each deliberately indifferent to Appellants' rights to release. *See id.*

Appellants posit that Hunter and Storrar each knew that Appellants were wrongfully detained because Storrar's son, Jeff, who admits to being with Mullins when the victims were confronted, told his father about the mistaken arrests soon after the incident. Storrar denies that Jeff told him anything except that Jeff was involved in an incident which the Sheriff's Department was investigating. Storrar also denies that former Sheriff Hunter knew about Appellants' mistaken arrest and detention because Storrar had no information about Appellants to share with Hunter. Appellants thus have no evidence that Hunter was aware of the unlawful detention. Even so, Appellants argue that we should reasonably infer that Hunter knew about Appellants' situation because Hunter advised Storrar to remove himself from any involvement in his son's case. Hunter's instruction to Storrar to remove himself from Jeff's investigation is simply consistent with what Storrar

12

says he told Hunter, *i.e.*, that Jeff was involved in an incident. Consequently, we do not accept Appellants' inference as a reasonable one. Without more evidence, we cannot infer that Hunter knew about the Appellants' wrongful detention. Thus, Appellants cannot prove that Hunter had the requisite subjective knowledge of and deliberate indifference toward the Appellants' false imprisonment.

However, Jeff Storrar's testimony about what he told his father creates a genuine dispute as to what Thomas Storrar Jr. actually knew. Acknowledging this unresolved issue of fact, the district court nevertheless granted Storrar and Hunter summary judgment on the false imprisonment claim because it doubted that the relatively short duration of confinement amounted to a constitutional deprivation of due process. *See Baker v. McCollan*, 443 U.S. 137, 144–45, 99 S. Ct. 2689, 2694–95 (1979) (finding that a 3-day deprivation of liberty resulting from mistaken identity did not give rise to a constitutional claim because the plaintiff was arrested and detained on a valid warrant). Alternatively, the district court found that even if Storrar violated Appellants' constitutional rights, both Hunter and Storrar were entitled to qualified immunity.

To receive the protection of qualified immunity from liability, Storrar's conduct must not have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*,

13

555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (internal quotation marks and citation omitted).  Thus, qualified immunity "protect[s] from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee*, 284 F.3d at 1194 (internal quotation marks omitted).  If Storrar is entitled to qualified immunity, he "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Id*.  If Storrar had discretionary authority, then the burden shifts to Appellants to show that their imprisonment constituted a violation of a constitutional right, and that the constitutional right was clearly established at the time of their detention.  *See Pearson*, 555 U.S. at 232, 129 S. Ct. at 815–16.

Assuming that Jeff told his father that three innocent people were mistakenly identified, arrested, and jailed, Thomas Storrar Jr. was acting within his discretionary authority when he chose not to investigate that claim any further.  The burden then shifts to Appellants to show a constitutional violation of a clearly established right.  Assuming *arguendo* that Appellants' detention constituted false imprisonment under § 1983, there was and is no clearly established law requiring a sheriff or undersheriff to investigate every lead alleging wrongful detention.  The personal, familial dimension of the instant facts and allegations (*i.e.*, that the exculpatory information purportedly came from Storrar's son and Hunter's

14

godson) does not change the outcome of our analysis.  Thomas Storrar Jr. did not violate clearly established law because he was under no duty to believe and investigate his son's claims.

In summary, the district court did not err in granting summary judgment in favor of Appellees Hunter and Storrar because (1) there is no evidence that Hunter knew about Appellants' unlawful detention, (2) the relatively short detention did not amount to a denial of substantive due process, and (3) even if there was a deprivation of due process, Appellees are entitled to qualified immunity from suit.

*Conspiracy under § 1983*

As mentioned *supra*, Appellants are unable to show that Hunter was aware of Appellants' wrongful detention.  Without awareness, Hunter could not have conspired with Storrar.  *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1121 (11th Cir. 1992) ("the linchpin for conspiracy is agreement, which presupposes communication").  Alternatively, we agree with the district court's finding that Appellants' claim for § 1983 conspiracy fails because Appellants cannot show that they suffered a harm that amounts to a deprivation of substantive due process.  *See Grider*, 618 F.3d at 1260 ("A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy

15

existed *that resulted in the actual denial of some underlying constitutional right*.")
(emphasis added).

## IV.

While we regret that Appellants were mistakenly identified, arrested, detained, and charged, and while we do not doubt that Appellants have suffered harm as a consequence of this mistake, Appellants have not shown that the district court erred in granting Appellees' motions for summary judgment on the false arrest, false imprisonment, and conspiracy claims.  Accordingly, we affirm the district court's grant of summary judgment.

**AFFIRMED.**